**NEW YORK STATE ELECTRIC & GAS CORPORATION, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

North Penn Gas Company, Corning Natural Gas Corporation, The Public Service Commission of the State of New York, Intervenors.

No. 88–3321.

United States Court of Appeals, Third Circuit.

Argued Nov. 29, 1988.

Decided Feb. 15, 1989.

William J. Cronin, Jonathan D. Schneider (argued), Blossom A. Peretz, Huber, Lawrence & Abell, New York City, for petitioner.

Catherine C. Cook, Gen. Counsel, Jerome M. Feit, Sol., Joseph S. Davies, Deputy Sol., Timm Abendroth (argued), Atty., F.E.R.C., Washington, D.C., for respondent.

Francis H. Caskin, Paul W. Diehl, Morley, Caskin & Generelly, Washington, D.C., for intervenor Corning Natural Gas Corp.

Richard Solomon, David D'Allesandro, Wilner & Scheiner, Washington, D.C., for intervenor New York State Public Service Com'n.

Joshua L. Menter (argued), Goldberg, Fieldman & Letham, Washington, D.C., for intervenor North Penn Gas Co.

Before SEITZ, STAPLETON, and COWEN, Circuit Judges.

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

New York State Electric & Gas Corporation ("NYSEG"), Corning Natural Gas Company ("Corning"), and the New York State Public Service Commission ("NYPSC"), collectively the "Petitioners," here petition for review of an order of the Federal Energy Regulatory Commission ("FERC") denying an application for additional rate refunds from North Penn Gas Company ("North Penn"). We will deny the petition.

North Penn is an interstate pipeline. Corning, a wholesale customer of North Penn, is an intrastate utility which sells gas at wholesale and retail in New York State. NYSEG, a local energy distribution company, purchases wholesale gas from Corning for resale in that state. Both Corning and NYSEG are subject to regulation by the NYPSC.

In 1985, North Penn filed with FERC a request for a rate increase. The Petitioners opposed the request on the ground that North Penn's system was underutilized and that, as a result, its proposed rates were unreasonably high. FERC permitted the increase to go into effect on March 1, 1986 subject to refund.

A settlement agreement was entered in June of 1986. Among other things, it provided for refunds to customers for the period between March 1, 1986 and the date upon which the settlement would be approved. The Commission subsequently approved the settlement agreement and on February 12, 1987, North Penn filed a refund report. The Petitioners insisted that the refunds provided for in the report were less than the amount called for in the settlement agreement. After the Commission sided with North Penn on this issue, this petition for review was filed.

The Petitioners and the Staff of FERC contended before the Commission that by offering transportation service and storage service in addition to sales service, North Penn could substantially increase its total "throughput," i.e., the total amount of gas flowing through the North Penn system. As a part of the settlement, North Penn agreed to file for a certificate of authority under the Natural Gas Act to provide transportation and storage services. This application was filed with the settlement agreement and granted by FERC.

The parties to the settlement also agreed to a restructuring of North Penn's rates based on the partial unbundling of North Penn's services. The rates, which were set forth in Appendix H to the settlement agreement, were designed to produce approximately a $1.3 million increase in North Penn's jurisdictional revenues. The rates in Appendix H were based on a projected 12-month "throughput" of 18,992,500 Mcf of gas comprised of the following volumes, allocated among the three kinds of service:

(1) 16,350,000 Mcf of sales volumes,

(2) 1,000,000 Mcf of storage volumes, and

(3) 1,642,500 Mcf of transportation volumes.

Of these sales volumes, the parties agreed on a breakdown between total jurisdictional volumes (8,250,000 Mcf) and total non-jurisdictional (8,100,000 Mcf) volumes, and further agreed upon a figure ($3,414,842) for the cost of the jurisdictional service. The parties further agreed that total "jurisdictional service" would include the 8,250,000 Mcf of sales volumes plus all of the transportation and storage volumes, for a total jurisdictional volume of 10,892,500 Mcf.

Refunds for the period from March 1, 1986 through the effective date of the settlement were provided for in Article XX, which in pertinent part reads as follows:

... for the period from March 1, 1986 to the effective date of the settlement rates in Appendix H adjusted for intervening changes in the cost of gas, [footnote omitted] North Penn shall refund to its jurisdictional customers the difference between the gas sales rates collected during that period and the rates that would have been collected for gas sales only as derived from the settlement cost of service and the total settlement throughput.

App. at 221.

Pipeline rates are calculated by dividing throughput into the cost of service. Petitioners construe the above-quoted language of the settlement agreement to require North Penn to calculate rates by dividing into the settlement cost of service the *total* settlement throughput. North Penn's Refund Report, ultimately accepted by FERC, on the other hand, interpreted this language to mean that the settlement cost of service should be divided by only the *gas sales volume component* of the total settlement throughput. North Penn's reading produces substantially smaller refunds than does Petitioners'.

In the orders under review, the Commission accepted North Penn's interpretation of Article XX, finding that Article XX recognized that only sales volumes, not transportation and storage volumes, were to be used to calculate the settlement rates. The Commission explained that "[o]therwise North Penn would be constrained to make 'refunds' for transportation and storage revenues it never collected." App. at 412. In terms of the settlement language, the Commission stressed the significance of the phrase "for gas sales only as derived from . . . ," stating that the only reasonable conclusion was that the phrase contemplated use of only the sales volume component of the "total settlement throughput" to calculate the refund rates. *Id.* The Commission found that interpretation consistent with the timing of the refunds, which cover the period beginning on March 1, 1986 and terminating on December 12, 1986 (the date the settlement rates took effect *and* North Penn received the Commission's authority to provide the transportation and storage service). In the words of the Commission:

> Thus, during the refund period of March 1, 1986 to December 12, 1986, North Penn was only authorized to provide and charge for its gas sales service. Accordingly, North Penn correctly calculated refunds for the period of March 1, 1986 to the effective date of the settlement rates in Appendix H by using the agreed-upon jurisdictional sales volume of 8,250,000 Mcf.

App. at 413.

On rehearing, the Commission reaffirmed its conclusions, stressing that the Petitioners' construction of the settlement would be at odds with the language of Article XX and the fact that only sales service was being provided during the refund period. The Commission also noted that the petitioners' construction would prevent North Penn from recovering its settlement cost of service:

> The calculations made by North Penn and approved by the Commission permit North Penn to recover the settlement cost of service during the refund period, based on the only service that it had certificate authorization to provide at

that time. The interpretation of the settlement advanced by Corning, NYSEG and New York would, in effect, prevent North Penn from recovering its settlement cost of services during the refund period.

App. at 428.

 We agree with the Petitioners that contract principles are generally applicable to the construction of settlement agreements and that it would be error for the Commission to depart from the plain meaning of a settlement agreement in establishing the parties' obligations. Where a settlement agreement is ambiguous, however, we conclude that the Commission is entitled, and indeed required, to bring its special knowledge of the industry and industry practice to bear on resolving the ambiguity. We further conclude that when it does so, a reviewing court should defer to its resolution of the ambiguity as long as that resolution is a rational one.

In *Western Union Telegraph Company v. Federal Communications Commission*, 541 F.2d 346 (3d Cir.1976), this court considered a petition for review of an order of the FCC determining the scope and applicability of exchange of facility contracts between Western Union and AT & T. We specifically rejected Western Union's argument that the Commission's decision was "entitled to no greater deference from this court than would be due a district court in a breach of contract action." 541 F.2d at 351. We held that in construing these contracts "the Commission acted within its statutory authority and that its conclusions were not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* at 348. Accordingly, we denied Western Union's petition for review. Applying the same standard of review here, there must be a similar disposition of the petition for review.

 The relevant language of the Agreement distilled to its essence is:

> . . . North Penn shall refund to its jurisdictional customers the difference between the gas sales rates collected during that period and the rates that would have been collected for gas sales only as derived from the settlement cost of ser-

vice and the total settlement through-put....

App. at 221. Petitioners make a plausible argument that North Penn's construction of this language renders the word "total" meaningless. On the other hand, North Penn makes an equally plausible argument that Petitioners' construction reads the word "only," as well as the phrase "as derived from," out of the disputed provision. In short, the provision is ambiguous.

The Commission was required to re-solved this ambiguity both at the time it considered whether the settlement was in the public interest and at the time this controversy arose. In resolving that ambiguity, it was not unreasonable for it to give controlling significance to phrase "gas sales only as derived from" in the context of a period during which North Penn had no sales other than gas sales. Moreover, we believe the Commission was entitled to consider, among other things, whether under the circumstances of this case it was likely that the parties would have agreed to a refund formula that would have not even permitted North Penn to recoup its cost of service.

As in *Western Union,* we conclude that the Commission's order is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Accordingly, the petition for review will be denied.