

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-30-1997

# Williams v. Secretary of Labor

Precedential or Non-Precedential:

Docket 97-3127

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Williams v. Secretary of Labor" (1997). *1997 Decisions*. Paper 286.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/286

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed December 30, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-3127

BERT WILLIAMS,
        Petitioner

v.

CYNTHIA METZLER, Acting Secretary, U.S. Department of
Labor and PUBLIC SERVICE, ELECTRIC AND GAS
COMPANY,
        Respondents

ON PETITION FOR REVIEW OF A FINAL DECISION
AND ORDER OF THE SECRETARY OF LABOR
DATED JANUARY 15, 1997
(ARB Case No. 96-160)

Argued October 30, 1997

Before: NYGAARD, McKEE, and WEIS, Circuit Judges.

Filed December 30, 1997

David R. Culp, Esquire (ARGUED)
BERRY AND CULP, P.C.
7000 Crittenden Street
Philadelphia, PA 19119

Attorneys for Petitioner

Ellen R. Edmond, Esquire (ARGUED)
William J. Stone, Esquire
United States Department of Labor
200 Constitution Avenue N.W.
Washington, D.C. 20210

Attorneys for Secretary of Labor

Robert M. Rader, Esquire (ARGUED)
WINSTON & STRAWN
1400 L Street, N.W.
Washington, D.C. 20005

Attorneys for Public Service Electric
and Gas Company

OPINION OF THE COURT

WEIS, Circuit Judge.

In this case, we hold that the Secretary of Labor does not have the authority, even with the consent of the parties, to enforce a settlement agreement resolving a retaliation claim brought by an employee/whistleblower against his employer under the Energy Reorganization Act. We also conclude that, as a matter of law, the Secretary misconstrued the agreement when he found no breach of the agreement by the employer. Accordingly, we will grant the petition for review and remand for further proceedings.

Petitioner Bert Williams filed a complaint with the Department of Labor under the Energy Reorganization Act pursuant to 42 U.S.C. S 5851. He alleged that his employer, Public Service Electric and Gas Company ("the company"), had retaliated against him for raising a nuclear safety violation that ultimately resulted in an $80,000 penalty against the company. A preliminary investigation by the

2

Regional Office of the Department favored Williams. The company sought an administrative hearing, but before the retaliation claim reached an ALJ, Williams and the company arrived at a settlement.

Williams was 62 years of age at the time of the settlement, and it was decided that Williams would take an early retirement. The agreement recited that he would immediately receive benefits as if he had continued to work until normal retirement at age 65. The Secretary approved this settlement on June 8, 1994 and dismissed the complaint with prejudice.

When the company began sending monthly payments in amounts less than Williams anticipated, he asserted a breach of the settlement agreement. He prepared and filed a "Motion for Sanctions and to Enforce Settlement" with the ALJ to whom the original complaint had been assigned in which he asked the Secretary to enforce the agreement or, in the alternative, bring an enforcement action in the district court on his behalf.

The parties agree that the company had purchased an annuity policy from an insurance company to fund its obligations under the settlement agreement and that, on its face, the policy would have paid the required amount per month. However, because of the way the company structured the annuity, withholding taxes reduced the monthly payments substantially below the amount specified in the agreement. It appears that the company unilaterally selected the method of providing the retirement benefits, but in defending its action, the company asserted that the funding had been complicated by the Employee Retirement Income Security Act, 29 U.S.C. S 1001 et seq., (ERISA) and the withholding provisions of the Internal Revenue Code.

When presented with Williams' motion, the ALJ ruled that he no longer had jurisdiction because the case had previously been forwarded to the Secretary. Williams then asked the Secretary either to remand the matter to the ALJ "for enforcement of the terms of the Agreement and Order or initiate, or join in, an action in the District Court to enforce your Order."

The then Secretary, Robert Reich, rejected the company's argument that enforcement "must be sought in the United States District Court" and found that he had authority to consider enforcement under the agreement's express provision that "the Department of Labor shall retain jurisdiction of this matter for purposes of enforcement of this Agreement." Moreover, the agreement gave Williams the "right to seek enforcement of the Agreement through the Department of Labor" in the event of a material breach by the company.

Remarking that "[i]t is clear that [the company] has not paid Williams the agreed amount reflecting an annuity with a survivor benefit," the Secretary questioned "whether [the company] was required to make all the [tax] deductions up front." He therefore remanded to an ALJ to "receive evidence regarding the appropriate tax treatment of the annuity and whether [the company] breached the Agreement."

Before the ALJ, Williams contended that the company had promised him full retirement benefits payable at age 62 rather than at age 65, and therefore he should pay taxes in the same manner as other retirees. He said that he had never applied for an annuity policy, nor had he been given the option for a lump sum payment as is customary with such contracts. To combat any suggestion that the company's action had been dictated by applicable law, Williams submitted an expert's report that explored alternative means for funding that would have yielded the agreed upon monthly benefits without running afoul of ERISA or the Internal Revenue Code.

In defense, the company first explained the tax consequences of purchasing a lump sum annuity. Next, the company said it chose to buy an annuity policy rather than make monthly payments from company funds because that method might have subjected future payments to the risk of the company's insolvency. The company never submitted that option or any others, however, to Williams for his consideration.

The ALJ concluded that the company had not breached the agreement and denied Williams' motion. The

4

Administrative Review Board, authorized by the Secretary
to issue final decisions, affirmed.1

I.

Since resolution of many of the issues raised by this
appeal turns on the nature of the proceedings that occurred
before the agency, we think it helpful to begin by observing
that the record is subject to two characterizations. Williams
asked the Secretary to enforce the agreement, or in the
alternative, to "initiate, or join in" an action in the district
court. At various points in our discussion, we consider
whether the Secretary asserted authority to enforce the
agreement himself or held a preliminary fact-finding
proceeding simply to inform his decision whether to pursue
enforcement on Williams' behalf. Overall, either
characterization raises concerns about the nature of the
Secretary's action in this case.

With this clarification, we preliminarily raise, sua sponte,
the issue of subject matter competence -- that is, the
authority of the Secretary of Labor to enforce a settlement
agreement. The Act provides that either the Secretary or a
party may seek enforcement of a settlement in the district
court. 42 U.S.C. S 5851(d),(e). See also 24 C.F.R. S 24.8.
There is, however, no language authorizing the Secretary to
enforce without resorting to the district court.

In Macktal v. Secretary of Labor, 923 F.2d 1150, 1153
(5th Cir. 1991), the court recognized that the Act authorizes
the Secretary to act in one of three ways -- to grant or deny
the relief sought in a complaint, or to approve a settlement.
The Court explicitly rejected proffered analogies to civil
litigation in determining the extent of the Secretary's
jurisdiction: "[w]hile such analogies may be helpful, an
analogy cannot give the Secretary authority withheld by the
words of the statute, nor can analogies deprive the
Secretary of authority provided by the words of the statute."
Id. Thus, the Court held that the Secretary is authorized to

_____

1. The Administrative Review Board designated its order as "final." The
Secretary of Labor has delegated authority to the Board to issue final
agency orders under the Energy Reorganization Act. 29 C.F.R. S 2.8.

approve or disapprove a settlement by the parties, but cannot modify its terms without their consent. Id. at 1154.

Like the court in Macktal, we are faced with an action by the Secretary beyond the scope of his statutorily prescribed authority. Unlike in Macktal, however, the parties here do not question the Secretary's authority to assert jurisdiction. The question is whether the matter is of any consequence. We think that it is.

A suit for breach of contract is a common law action of ancient vintage and is properly cognizable in Article III courts. In Commodity Futures Trading Commission v. Schor, 478 U.S. 833 (1986), the Supreme Court held that Congress could authorize an administrative agency to adjudicate a common law claim between two individuals in connection with a regulatory proceeding. The Court noted that a litigant having a personal right to an impartial and independent federal court adjudication could waive that right. Id. at 848. In Schor, the record demonstrated that the complainant had elected to seek relief before the agency rather than proceeding to judgment in a state or federal court on his claim. Id. at 849–50.

Despite the waiver, however, the court discussed whether the Commodities Exchange Act violated the Separation of Powers Doctrine, which prevents "the encroachment or aggrandizement of one branch at the expense of the other." Id. at 850, quoting Buckley v. Valeo, 424 U.S. 1, 122 (1976) (per curiam). In this context, the Court observed, "[t]o the extent that this structural principle is implicated in a given case, the parties cannot by consent cure the constitutional difficulty for the same reason that the parties by consent cannot confer on federal courts subject-matter jurisdiction beyond the limitations imposed by Article III, S 2." Id. at 850–51.

In this case, the parties are attempting to vest consensual jurisdiction in the Secretary to perform a function that Congress has explicitly placed in the district court. The issue is thus based on a statutory allocation of powers rather than a constitutional one. We believe, however, that Schor provides the guiding principle in these circumstances. Allowing the parties' waiver to grant power

6

to an executive agency where the statute places that authority in the judicial branch impermissibly flies in the face of the intent of the statute. Congress could have given the Secretary the jurisdiction that the parties assert here, but chose not to do so.

It is significant that the Secretary does not claim a general power to adjudicate disputes over the terms of settlement agreements. In the proceedings of Pillow v. Bechtel Construction, Inc., ARB Case No. 97-040, 1997 WL 563822 (Sept. 11, 1997), the Administrative Review Board agreed "with the general proposition that after afinal decision has been issued, the Board lacks jurisdiction over a dispute about the proper interpretation of a settlement agreement." Id. at *2. In making that pronouncement, the Board cited and distinguished the case before us as an example where jurisdiction was retained by an express provision in the agreement. Id.

In the order remanding this case to the ALJ, the Secretary concluded that "the retention of jurisdiction clause [in the agreement] authorizes the Department to hold further administrative proceedings prior to either the Department or a party seeking enforcement in the district court . . . [T]here is a genuine dispute whether [the company] has breached the Agreement and I will exercise my retained jurisdiction to resolve that dispute."

The Secretary cited Kokkonen v. Guardian Life Insurance Company of America, 511 U.S. 375 (1994), for support. In that case, the Court held that federal district courts have no inherent authority to enforce a settlement once a final judgment has been entered, but may do so if the agreement expressly retains jurisdiction in the court for enforcement purposes. Id. at 381. Unlike a district court, however, the Secretary has no power to enforce under this Act and therefore has no jurisdiction to retain. The Secretary's authorization is limited to seeking enforcement in the district court.

We can perceive the value to the Secretary of having an explanation of the parties' dispute in the interest of making an informed decision whether to proceed in the district court. See Vermont Yankee Nuclear Power Corp. v. Natural

7

Resources Defense Council, Inc., 435 U.S. 519, 543 (1978) (agencies should be free to devise methods of inquiry capable of permitting them to discharge their multitudinous duties). That explanation, however, does not support the Secretary's authority in other situations to make a formal adjudication entitled to preclusive effect in subsequent district court actions. See United States v. Utah Constr. and Mining Co., 384 U.S. 394, 422 (1966) (res judicata may attach to issues resolved in adjudicative administrative proceeding); Thompson v. United States Dep't of Labor, 885 F.2d 551, 556–57 (9th Cir. 1989) (same).

If the Secretary's decision serves to block full consideration of the merits in the district court, then the Secretary has done indirectly what is ultra vires if done directly. For example, should the Secretary decide that one party has breached a settlement agreement, the other party in a subsequent enforcement action in the district court could invoke claim preclusion to bar a complete determination on the merits by the district court.2 Such a result could effectively make the district court proceeding superfluous.

In sum, the Secretary may utilize an informal fact gathering proceeding preliminary to enforcement. But since the Act does not authorize direct enforcement or indirect enforcement by the Secretary, a formal adjudicative proceeding cannot limit the scope of a district court enforcement suit.

II.

From the outset, the company has challenged this Court's jurisdiction to review the Secretary's order denying Williams' motions and we now turn our attention to that issue.

---

2. At oral argument, counsel for the Company stated that it would assert res judicata and the "election of remedies" doctrine. Counsel for the Secretary contended that as a result of the agency action, Williams would be barred from seeking enforcement in the district court should he decide to bring suit there. But see Richard B. Stewart and Cass R. Sunstein, Public Programs and Private Rights, 95 Harv. L.Rev. 1195, 1216, 1289 (1982).

In this case, jurisdiction to review administrative agency orders has been established by the statute authorizing agency action. Under 42 U.S.C. S 5851(b)(2)(A), the Secretary of Labor, upon receipt of a whistle blower complaint, must issue an order either granting relief, denying relief, or approving a settlement agreement. Such agreements are entered into by the Secretary and the offending party with the participation and consent of the complainant. Subsection (c)(1) provides that "[a]ny person adversely affected or aggrieved by an order issued under subsection (b) . . . may obtain review of the order in the United States court of appeals for the circuit in which the violation . . . occurred."

The company mounts two attacks on our jurisdiction. The first is straightforward. Section 5851(b) authorizes the Secretary to issue three types of orders:

> 1. an order granting relief;
>
> 2. an order denying the complaint; and
>
> 3. an order settling the dispute.

The company contends that because the order Williams would have us review is none of these three designated types, it does not come within our jurisdiction.

Adopting the company's position would impose a cramped interpretation on the scope of judicial review of administrative decisions. As the Supreme Court remarked in Lindahl v. Office of Personnel Management, 470 U.S. 768 (1985): "We have often noted that `only upon a showing of clear and convincing evidence of a contrary legislative intent should the courts restrict access to judicial review.' " Id. at 778, quoting Abbott Labs v. Gardner, 387 U.S. 136, 141 (1967); see also Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 670 (1986); Dunlop v. Bachowski, 421 U.S. 560, 568 (1975) (even where review is limited, agency must explain its action). We start then with the presumption that judicial review is available. Only in unusual circumstances will a party aggrieved by an agency decision be denied access to the courts.

As we observed in Vineland Chemical Co. v. United States Environmental Protection Agency, 810 F.2d 402, 405 (3d

9

Cir. 1987), "[w]hile a statutory basis for jurisdiction is required," case law "caution[s] this court not to construe appellate review provisions too narrowly. To avoid unintended and anomalous results, statutes authorizing review of specified agency actions should be construed to allow review of agency actions which are `functionally similar' or `tantamount to' those specified actions." Similarly, in Modine Manufacturing Corp. v. Kay, 791 F.2d 267, 270 (3d Cir. 1986), we stated that where a statute allows for some appellate review of agency action, the "jurisdictional provisions should be construed generously absent clear and convincing evidence of a contrary congressional intent."

We have found nothing in the legislative history of the Energy Reorganization Act to indicate that Congress intended to restrict judicial review of rulings made in the course of administrative proceedings. Additionally, as we noted in Passaic Valley Sewerage Commissioners v. United States Department of Labor, 992 F.2d 474, 479 n.8 (3d Cir. 1993), several federal statutes contain whistleblower protection provisions identical or similar to those of the Energy Reorganization Act. See, e.g., 33 U.S.C. S 1367 (Federal Water Pollution Control Act); 42 U.S.C. S 7622 (Clean Air Act); 42 U.S.C. S 9610 (Comprehensive Environmental Response, Compensation, and Liability Act); 42 U.S.C. S 300j-9(i) (Safe Water Drinking Act); 42 U.S.C. S 6971 (Resource Conservation and Recovery Act); 15 U.S.C. S 2622 (Toxic Substances Control Act); 30 U.S.C. S 815(c)(1) (Federal Mine Safety and Health Act); 29 U.S.C. S 158(a)(4) (National Labor Relations Act); 45 U.S.C. S 441(a) (Federal Railroad Safety Authorization Act). Nothing in the legislative history or judicial interpretation of these similar provisions causes us to question application of the general principle favoring judicial review of agency decision-making.

Opinions from other Courts of Appeals addressing jurisdiction under the Energy Reorganization Act provide little guidance in the circumstances here. In Carolina Power and Light v. United States Department of Labor, 43 F.3d 912 (4th Cir. 1995), the Court was asked to review an order of the Secretary remanding a proposed settlement to an ALJ. The Court held that the order was not subject to judicial

10

review because it was not final and not entered under subsection (b) of S 5851. Id. at 914-15. In Macktal, the Court disapproved the action of the Secretary in striking certain provisions from a settlement previously arrived at by the employee and the employer. 923 F.2d at 1154. Jurisdiction to review was assumed with little discussion. Id.

In Ellis Fischel State Cancer Hospital v. Marshall, 629 F.2d 563 (8th Cir. 1980), an employer petitioned for review of the Secretary's order granting relief to an employee. The employee intervened, requesting enforcement. Id. at 566. The Court denied review of the Secretary's order as to the employer, but concluded that the employee's motion for enforcement should have been brought in the district court. Id.

In the absence of persuasive authority adopting a limited reading of the Act's review provisions, we read them broadly in conformity with the philosophy expressed in our case law. In Vineland, we concluded that statutory provisions for judicial review of the Secretary's action "issuing, denying, modifying, or revoking" a permit extended to all orders terminating interim status under the Resource Conservation and Recovery Act. 810 F.2d at 408. Similarly, in Modine, we held that appellate jurisdiction for review of effluent standards promulgated under the Clean Water Act extended to rulings on the applicability of those standards to a specific discharger. 791 F.2d at 271. In both Vineland and Modine, the governing statutory provisions did not specifically cover the orders presented for review. Nevertheless, we assumed jurisdiction. See Dart v. United States, 848 F.2d 217, 221, 223 (D.C. Cir. 1988) (judicial review is favored when an agency is acting beyond its authority).

Those precedents provide guidance here. We consider the ruling of the Secretary an adjudicatory construction of the previously approved settlement agreement. See Macktal, 923 F.2d at 1154. That action resulted in the Secretary's decision to forego enforcement in the district court. In the circumstances here, we conclude that the petition for review falls within the appellate jurisdiction authorized by the Act.

11

The second part of the jurisdictional attack is focused on the company's view that the Secretary's order represents a decision not to begin a suit in the district court. As such, the company argues that the Secretary's action is akin to the decision not to enforce which was held to be discretionary and unreviewable in Heckler v. Chaney, 470 U.S. 821 (1985).

The proceeding also bears a resemblance to that in Dunlop, 421 U.S. at 562-65. There, the Supreme Court held that the Secretary of Labor's decision not to request the district court to set aside a union election was judicially reviewable and that the Secretary should submit a statement of his reasons for nonaction. Id. at 566-68.

The situation presented here is distinguishable from Chaney. There, the Court held that the Food and Drug Administration's refusal to enforce the substantive prohibitions in its enabling act was nonreviewable. The Court noted the important differences between an agency's decision to enforce and one declining to do so. 470 U.S. at 831-32. Although acknowledging that administrative concerns such as allocation of resources and policy considerations must enter into the balance, the Court discussed another factor affecting the enforcement decision: "[W]hen an agency refuses to act it generally does not exercise its coercive power over an individual's liberty or property rights, and thus does not infringe upon areas that courts often are called upon to protect." Id . at 832 (emphasis in original). In contrast, where the agency does move to enforce, that action provides a focus for judicial review and can at least "be reviewed to determine whether the agency exceeded its statutory powers." Id.

The Secretary's decision not to seek enforcement in this case is fundamentally different from the non-action examined in Chaney. Here, the Secretary has taken affirmative steps to adjudicate a breach of contract claim. Because that proceeding ultimately determined the amount of the monthly payments to be made to Williams, it directly affected his property rights.

In contrast to Chaney, the Secretary's decision not to proceed with enforcement in the district court in this case

12

was not based on consideration of the agency's policy or resources, but rather upon a contractual construction. See S.E.C. v. Chaney Corp., 318 U.S. 80, 94 (1943); Florida Dep't of Labor and Employment Sec. v. United States Dep't of Labor, 893 F.2d 1319, 1322 (11th Cir. 1990) ("An important corollary to the general rule that courts will not substitute their views for the discretionary decisions of an agency on matters of policy is the recognition that reviewing courts do have the authority and responsibility to correct errors of law made by the agency"). The ruling of the Secretary, if allowed to stand, could have claim or issue preclusive effect and prevent Williams from obtaining relief in the district court. See Utah Construction, 384 U.S. at 422; see also Thompson, 885 F.2d at 556–57. Thus, this case presents agency action that bears on property rights in an area in which courts typically act.

Adoption of the company's argument that Chaney bars review here would actually undermine the reasoning in that case by ignoring the factors that generated its holding. Our cases that followed Chaney, such as New Jersey Department of Environmental Protection and Energy v. Long Island Power Authority, 30 F.3d 403, 418 n.27 (3d Cir. 1994) and Harmon Cove Condominium Ass'n v. Marsh, 815 F.2d 949, 951–52 (3d Cir. 1987), are similarly distinguishable. We therefore reject the company's contention that Chaney is applicable here.

We indicated earlier our misgivings about the legitimacy of the Secretary's conclusions derived from the hearing to the extent that they could be considered indirect enforcement. Although there is some basis for characterizing the proceedings as informal and non-binding, the stronger indication is that the Secretary considered them to be a formal adjudication. However, rather than resting our decision solely on the basis of ultra vires agency action, in view of the ambiguous state of the record, the interests of judicial efficiency, and the fact that the parties fully briefed the issues, we will address the merits as well. In this connection, we note that there are no issues of fact in controversy and the administrative record is fully developed. See Modine, 791 F.2d at 270.

13

III.

Judicial review under the Act is to conform with the Administrative Procedure Act. 42 U.S.C. S 5851(c)(1). Thus, we must determine whether the agency ruling is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. S 706(2)(A).

Basic contract principles apply to settlement agreements. New York State Electric & Gas Corp. v. F.E.R.C., 875 F.2d 43, 45 (3d Cir. 1989). This settlement agreement involves a right to sue derived from a federal statute and, consequently, federal common law principles govern construction of the contract. See Town of Newton v. Rummery, 480 U.S. 386, 392 (1987); Macktal, 923 F.2d at 1157 n.32.

It is surely debatable whether a court owes any deference to an administrative agency's construction of a contract that lies outside its area of expertise, as is the case here. See New York State Electric & Gas, 875 F.2d at 45 (contract principles generally applicable to construction of settlement agreement unless it is ambiguous and deference to Commission's interpretation based on specialized industry knowledge may be appropriate). We need not digress into a discussion of whether a more extensive scrutiny is appropriate, however, because whether we apply the Administrative Procedure Act's standard or that applicable to the appeal of a district court judgment, we owe no deference to an erroneous conclusion of law. See , e.g., Dill v. I.N.S., 773 F.2d 25, 28 (3d Cir. 1985) (on questions of law, administrative judgment is subject to plenary judicial review).

IV.

Section 15 of the agreement provides that Williams:

> "will receive a retirement benefit based upon a single life annuity in the amount of not less than [$926.96] per month and such other benefits as are in accordance with [the company's] pension plan, including . . . rights under, the `Medical-Dental Benefits Plan for Retired Employees'. . . . Mr. Williams

14

is further entitled to increases in his retirement and other benefits as the company may subsequently grant to company retirees. [The Company] represents that this amount meets or exceeds the monthly benefit that Mr. Williams would have received if he had held a Grade 14 compensation classification, at a job value of [$68,618], for the three-year period immediately preceding April 1, 1994. In order to pay this benefit, [the company] shall supplement the pension plan benefits to which Mr. Williams would otherwise be entitled under the pension plan."

Later, when Williams chose to receive a 50% joint and survivor annuity rather than a single one, it was agreed that the monthly amount would be reduced to $782.35. The settlement agreement does not specify the manner in which the company was to fulfill its commitment to Williams, nor touch in any way upon the allocation of taxes. The company purchased an annuity policy after having been advised by an insurance agent that, for a cost of $60,655.85, the policy would provide the agreed monthly benefit amount of $782.35.

Concluding that the $60,655.85 would be taxable income to Williams, the company withheld state and federal taxes due on that sum and used the remaining $37,382.00 to buy the annuity policy.[3] As a result, Williams received monthly checks of $477.13, rather than the expected amount of $782.35.

Construction of a contract is different than interpretation and is purely a question of law subject to de novo review. Ram Constr. Co. v. American States Ins. Co., 749 F.2d 1049, 1052-53 (3d Cir. 1984). "In determining the legal effect an agreement will have on an event the parties did not foresee, the process is construction, not interpretation." Id. at 1053. See also 3 Corbin on Contracts S 534, at 12 (2nd ed. 1960); Restatement (Second) of Contracts S 200 cmt. c, at 82 (1981).

_____

3. Apparently, receipt of other financial consideration included in the agreement resulted in a ballooning of Williams' income in 1994 catapulting him into the highest tax bracket in that year.

15

Interpretation of the contractual language is the first step towards proper construction. Corbin S 534, at 9, 11. In the process of interpreting a contract, the court seeks to ascertain the intent of the parties. Barco Urban Renewal Corp. v. Housing Auth., 674 F.2d 1001, 1008 (3d Cir. 1982); Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1009-1012 (3d Cir. 1980). That inquiry, however, does not require a search for the subjective intent of the parties, but rather centers on the intent embodied in the language that the parties chose to memorialize their agreement. Barco Urban Renewal, 674 F.2d at 1008-1009; Mellon Bank, 619 F.2d at 1009.

In the oft quoted words of Justice Oliver Wendell Holmes, "the making of a contract depends not on the agreement of two minds, in one intention, but on the agreement of two sets of external signs -- not on the parties' having meant the same thing, but on their having said the same thing." Holmes, The Path of the Law, 10 Harv. L.Rev. 457, 463 (1897) (emphasis in original).

In the process of defining the objective intent of the parties, a court must examine the entire agreement."A writing is interpreted as a whole, and all writings that are part of the same transaction are interpreted together." Restatement (Second) of Contracts S 202(2). As a corollary rule, an "ambiguous subsidiary contractual provision must be given an interpretation consistent with the dominant purpose of the contract." Barco Urban Renewal, 674 F.2d at 1009. As an additional aid to proper construction, the court should consider the situation of the parties, the attendant circumstances and the ends they sought to achieve. Id. at 1007, quoting Atlantic N. Airlines, Inc. v. Schwimmer, 96 A.2d 652, 656 (N.J. 1953); see also Restatement (Second) of Contracts S 202(1).

The parties chose the term "annuity" in defining the company's obligation. "Annuity" is defined as "a right to receive fixed, periodic payments, either for life or for a term of years . . . A fixed sum payable to a person at specified intervals for a specific period of time or for life." Black's Law Dictionary, at 90 (6th ed. 1990). Absent indicia that, at the time the contract was executed, the parties assigned a specialized meaning to an otherwise common term, we will

16

not alter its accepted usage. See Mellon Bank , 619 F.2d at 1009-10. We refuse to read "annuity" as "annuity policy" or "annuity contract" in part because these terms have distinct meanings, Black's Law Dictionary, at 90, and also because the parties, both represented by counsel during drafting, could have chosen to make this distinction. Thus, the settlement agreement does not require the company to purchase an insurance policy – that was only one of the options available.4

The ALJ, however, in concluding that no breach had occurred, apparently misunderstood the agreement and the meaning of "annuity" when he wrote: "[T]he Settlement's intent is clear. [The company] was to purchase Mr. Williams an annuity in order to provide a `retirement benefit' under the terms of the Agreement." In another passage he wrote, "if [the company] had not purchased the annuity as stated in Section 15 of the Agreement, such inaction would have constituted breach of the Agreement."

The record demonstrates that there is little dispute about the facts and the parties' intentions in this case. Overall, it appears that the parties' perceptions of what they had agreed upon were consistent.

In an affidavit submitted by the company, Richard D. Quinn, the General Manager -- Compensation and Benefits for the company, stated that he was contacted by a company official to "seek assistance in structuring payments to Mr. Williams as part of an anticipated settlement. I was advised that Mr. Williams was to receive a benefit that would be equivalent to an immediately payable pension, in other words, as if Mr. Williams were eligible to retire immediately and receive pension benefits like any other [company] retiree under the [company] Pension Plan."

Quinn noted that Williams' pension was vested, but he was not yet eligible to retire, not having reached age 65. The affidavit continued: Therefore, I was asked to arrange

---

4. The modifier "single life" does not alter our reading of the term "annuity," which is frequently confused with the method or source of its payment. See In re Estate of Dwight, 134 A.2d 45, 48-49 (Pa. 1957).

17

for a separate, immediately payable benefits plan for Mr. Williams."

Quinn apparently was given a draft of the proposed settlement agreement that mirrored the form ultimately executed. He stated: "[when] I saw no direction from these provisions as to how the annuity was to be created .. . I began to investigate how this could be accomplished before the Agreement was signed."

The settlement agreement was executed by the parties on April 19, 1994 and approved by the Secretary on June 8, 1994. In a letter dated August 12, 1994, outside counsel advised the company that the purchase of an annuity policy of approximately $60,000 would, for tax purposes, be considered a transfer to the employee in that amount in the current year. The letter suggested that "the prudent course would be for [the company] to withhold Federal income tax on the payment for Mr. Williams' benefit of about $60,000 (thus purchasing an annuity for a reduced amount which provides smaller annuity payments than provided in the Settlement Agreement), [and] report it on a Form 1099 accordingly . . .."

Robert C. Krueger, Jr., the Director -- Tax Services for the company, stated in an affidavit that his first involvement in implementation of the settlement agreement occurred in August 1994 when he was contacted by Quinn and Richard Fryling, the company's General Solicitor. Krueger averred, "I was advised that the Settlement Agreement required [the company] to create an annuity for Mr. Williams, the owner/beneficiary of the annuity, that would provide benefits replicating those to which he would have been entitled under the [company] Pension Plan if he had had sufficient years of service to retire at that time."

Krueger and Quinn then discussed the "alternative of making the required annuity payments out of general corporate funds as distinct from the purchasing an annuity from an outside entity." They rejected that option because it "would not have been `in accordance with' (or, as I [Krueger] understood the contractual commitment at that time, `equivalent to') those under [the company's] qualified pension plan." In addition, Krueger and Quinn reasoned

18

that "payment from corporate funds [would be] contingent on the continued viability" of the company and therefore such an arrangement would not provide Williams with the same degree of security as participation in pension funds held by an external trust.

This evidence makes it clear that at the time of the agreement's execution Williams and the company both intended the annuity payments to be "equivalent to an immediately payable pension . . . as if Mr. Williams were eligible to retire immediately and receive pension benefits like any other [company] retiree."

Having discerned that the parties' intentions were essentially consistent, we now address the agreement's legal operation. In the process of construction, courts must often reckon with the effect of events unforeseen or not contemplated by the parties at the time agreement is reached. Corbin on Contracts S 534, at 11. Here, the agreement fails to address the tax consequences of the parties' arrangement. The record does not reveal whether this omission resulted from oversight or intention. Nonetheless, it is necessary for proper construction of the agreement to attempt to fill what appears to be a gap. See Restatement (Second) of Contracts S 204. We do so by examining the agreement's underlying purpose and integrated provisions.

Under the company's retirement plan, retirees do not pay taxes "up front," but only as monthly payments are received. However, under the company's choice of options, Williams' taxes were paid in advance and at a much higher rate. Clearly, he fared less favorably than other retirees.

The record discloses other ways of structuring the settlement that would have avoided this problem while putting Williams in the same position as other retirees. For example, the company could have offered him the option of receiving periodic payments from company funds. Or, as his expert averred, a different type of annuity insurance contract with far more favorable tax consequences was available. Moreover, it appears from the record that if the company purchased an additional annuity for $25,000, the stipulated monthly benefit of $782.35 would be attained.

The main thrust of the agreement was to provide Williams with benefits equivalent to those enjoyed by other retirees. That arrangement realistically contemplated reasonable equivalency in tax liability so that the usable income Williams received would compare fairly with that of other company retirees.

The company started off on the right track by considering an annuity policy that would have provided the agreed upon amount before taxes, but the company became distracted by the unusual tax liability created by its plan. Losing sight of the fact that the agreement required creation of equivalent benefits, the company nevertheless pursued its original plan.

Nothing specified or implied in the agreement permitted the company to deviate from its obligation to provide the intended benefits because of tax or ERISA complexities. Those problems made the company's task more difficult, but far from insurmountable. We are left with no doubt that the company breached the agreement.

On this record, the ALJ's decision as affirmed was legally erroneous under basic contract principles. The Secretary's derivative determination not to seek enforcement was likewise not in accordance with law.

Accordingly, we grant the petition for review and remand for further proceedings. The Secretary retains the discretion whether or not to seek enforcement, but may not consider the company's actions as set forth in this record to be in compliance with the settlement agreement. In view of the Secretary's inability to enforce, Williams is to have the opportunity to withdraw his motion if he chooses and pursue an action for enforcement in the district court.

A True Copy:
Teste:

  Clerk of the United States Court of Appeals
  for the Third Circuit