**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1613
_____

UNITED STATES OF AMERICA

v.

DALE STRUBLE; MARIE STRUBLE; ONEWEST BANK FSB; DEUTSCHE BANK
NATL TRUST COMPANY, as Trustee

MARIE STRUBLE,
Third Party Plaintiff
v.

MADISON SETTLEMENT SERVICES, LLC; DAVID R. BRESCHI; President of
Madison Services LLC; VALERIE BORDERS, Assistant to David Breschi of Madison
Settlement LLC; FIDELITY NATIONAL TITLE INSURANCE COMPANY,
Third Party Defendants

Marie Struble,
Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. Civ. No. 3:09-cv-05886)
District Judge:  Honorable Joel A. Pisano
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 24, 2012

Before:  AMBRO, FISHER and GARTH, Circuit Judges

(Opinion filed: July 26, 2012)

_____

OPINION
_____

PER CURIAM

Marie Struble appeals pro se from the orders of the United States District Court for

the District of New Jersey granting Deutsche Bank's motion to enforce a settlement

agreement, and denying her motion to enforce an alternative draft of the settlement

agreement and to remand a cross-claim to state court. Both parties' motions stemmed

from a disagreement over the settlement agreement resolving a complaint by the federal

government seeking foreclosure of federal tax liens on Marie Struble's property. Because

the hand-written draft of the settlement agreement signed by all parties was binding, we

will affirm.

In 1999 and 2001, the IRS made an assessment of approximately $170,000 against

Dale Struble representing income tax liabilities for tax years 1997 through 2000. Federal

tax liens attached to the Strubles' family residence. When Dale and Marie Struble

divorced in 2002, Marie Struble received title to the property. The property settlement

acknowledged the federal tax liens against Dale Struble.[1]

The United States, in its complaint, sought to foreclose on the federal tax liens on

Marie Struble's house. The complaint asked the court to declare that Dale Struble owed

_____

[1] In February 2003, Marie Struble filed an action to quiet title in the Superior Court of
New Jersey. That case eventually found its way into this Court, and was addressed in
Struble v. Struble, C.A. No. 03-3932. In that case this Court concluded that a valid tax

2

$225,277 and foreclose on the property, the proceeds of which would go first to the United States for payment of the tax liens. Marie Struble filed a cross-claim against her ex-husband, asserting that he had not complied with prior orders to satisfy the tax liability. Shortly thereafter, an order for default judgment was entered against Dale Struble.

The United States filed an amended complaint in December 2010, naming Deutsche Bank National Trust Company (Deutsche Bank) as a defendant, as Deutsche Bank had a beneficial interest in the property. Deutsche Bank purchased the beneficial interests of the mortgage from IndyMac Bank, pursuant to a pooling and servicing agreement (PSA). This particular method of purchase would become a major point of Marie Struble's later claims. In its answer, Deutsche Bank included a cross-claim, seeking judgment against Dale and Marie Struble for any amount Deutsche Bank would have to pay to satisfy the lien and retain its first lien position on the property. Marie Struble, in her answer to Deutsche Bank, filed her own cross-claims. The crux of her cross-claims was a challenge to the validity of the PSA through which Deutsche Bank purchased her mortgage from IndyMac, and thus of Deutsche Bank's claim of interest in her property. On December 6, 2010, the District Court issued an order referring this action to mediation. The order encouraged the mediator to include all third parties necessary to "achieve a complete resolution." The court also entered an order extending

_____

lien existed on her property.

3

Deutsche Bank's deadline to respond to Marie Struble's claims until after mediation, in the hope that the mediation would resolve all issues.

The mediation seemed to be successful. On April 26, 2011, all parties in mediation agreed to a global settlement. The terms, hand-written on a sheet of paper, stated that Marie Struble would pay $15,000 to the IRS, Fidelity Bank would pay $77,500 on behalf of Deutsche Bank, and third party Madison Settlements would pay $97,500, in exchange for the United States' releasing the property from the lien. Further, the terms stated clearly that "the parties shall execute mutual releases." According to the United States, this was understood to resolve the cross claims between Marie Struble and Deutsche Bank, but not necessarily to resolve either of their claims against Dale Struble, who was not present at mediation. The handwritten agreement was signed by representatives of Deutsche Bank, Madison Settlements, the United States, and by Marie Struble. On May 2, 2011 the District Court entered an order dismissing the action without prejudice to reopen if the settlement was not consummated.

Unfortunately, the settlement was not consummated. The parties circulated a settlement agreement, drafted by the United States, resolving all claims, but acknowledging that Marie Struble and Deutsche Bank reserved their rights to pursue claims against Dale Struble. The draft agreement referred to a stipulation of dismissal that would be filed with the court, dismissing the United States' complaint but preserving Marie Struble's and Deutsche Bank's rights to pursue their cross claims against Dale Struble. The draft stipulation stated:

4

> There appearing no independent basis for this Court to exercise subject matter jurisdiction over the cross-claims brought by Defendant Marie Struble and Defendant Deutsche Bank National Trust Company, Trustee, those cross-claims are dismissed without prejudice to those parties' rights to file an action(s) in state court to pursue their claims.

(D.CT. dkt #66-3 at 42-43.) Marie Struble signed this draft stipulation.

However, on June 26, 2011, Marie Struble informed all parties that she would not release her claims against Deutsche Bank. She circulated a copy of the draft settlement, in which she crossed out all mention of Deutsche Bank, but for the stipulation that Deutsche Bank pay $77,500 to cover Dale Struble's taxes. Marie Struble based her objections to releasing her cross-claims on a newspaper article detailing possible improprieties in Deutsche Bank's actions as a trustee administering mortgage-backed securities. She also stated that, as Deutsche Bank's attorney at mediation was not authorized to respond directly to the cross-claim, any agreement regarding the cross-claim was void. Not surprisingly, the other parties all found this new draft unacceptable

In response, the United States sent a revised proposed stipulation of dismissal, clarifying that all claims would be dismissed with prejudice except for Marie Struble and Deutsche Bank's cross-claims against Dale Struble.

> There appearing no independent basis for this Court to exercise subject matter jurisdiction over the cross-claims brought against Dale W. Struble by Defendant Marie Struble and Defendant Deutsche Bank National Trust Company, Trustee, those cross-claims against Dale W. Struble are dismissed without prejudice to those parties' rights to file an action(s) in state court to pursue their claims against him. The cross-claims between Defendant Marie Struble and Defendant Deutsche Bank National Trust Company, Trustee, however, are dismissed with prejudice.

5

( D.CT. dkt #69-2 at 3-4.)  Marie Struble did not agree to this new draft. The District Court entered a motion reopening the case, and permitted Deutsche Bank to file a motion to enforce the settlement.  Marie Struble opposed the motion and cross-moved to enforce her interpretation of the settlement agreement. She also moved to remand her claim to quiet title against Deutsche Bank to state court.[2]

The District Court granted Deutsche Bank's motion and denied Marie Struble's motion. This appeal followed.

We have jurisdiction pursuant to 28 U.S.C. §1291. We review a district court's factual conclusions related to a settlement agreement, such as whether an agreement exists or whether a party assented to an agreement, under the clearly erroneous standard of review. Omega Eng'g Inc., v. Omega S.A., 432 F.3d 437, 443 (2d Cir. 2005).

Basic contract principles apply to settlement agreements. New York State Electric & Gas Corp. v. F.E.R.C., 875 F.2d 43, 45 (3d Cir. 1989).  Federal courts apply state law in determining whether a settlement agreement was formed. See T Street Development, LLC v. Dereje and Dereje, 586 F.3d 6, 11 (D.C. Cir. 2009).  Here, New Jersey law applies. "An agreement to settle a lawsuit is a contract which, like all other contracts, may be entered freely into, and which a court, absent a demonstration of 'fraud or other compelling circumstances' shall honor and enforce as it does other contracts." Pascarella

---

[2] Struble also asserted that her loan modification issue and an issue regarding cloud on her title were "not yet ripe" and requested that the issues be preserved for potential future litigation and remanded to state court.

6

v. Bruck, 462 A.2d 186, 190 (N.J. Super. 1983) (quoting Honeywell v. Bubb, 325 A.2d 832, 835 (N.J. Super. 1974)).

In the present case, all parties at mediation clearly signed the April 26, 2011 hand-written agreement. All material terms were agreed upon – the United States agreed to accept reduced payments from all parties, and in return to remove the tax lien from Marie Struble's property. The parties also agreed to drop all cross-claims against each other, but not against Dale Struble. The affidavit of the representative of Madison Settlement Services, along with the United States's response to Marie Struble's motion, demonstrate that this agreement was understood to be binding by all parties. It is thus clear that that April 26 agreement was binding, and a settlement agreement was formed. Marie Struble now claims that "there is no mention of a settlement of the cross-claim" in the settlement agreement.[3] (D.CT. dkt #66-2 at 9.) This claim is belied by the mediation agreement, which was signed by all parties. The District Court did not err in granting the motion to enforce the settlement agreement. Regardless, Marie Struble's motion to enforce her version of the settlement agreement is without any merit. Marie Struble is the only person who signed this version. It is hard to discern any reason to enforce a copy of a contract modified and signed by one person several months after all parties had signed a binding version of the same. Cf. U.S. v. Lightman, 988 F.Supp. 448 (D.N.J. 1997) ("Where a

---

[3]Marie Struble also claims that the mediation was barred from addressing her cross-claim, as Deutsche Bank's attorney did not represent Deutsche Bank with regard to the cross-claim. Marie Struble does not provide any legal support for this claim.

party to an agreement-in-principle suddenly changes its mind and refuses to execute the written contract without explanation, the court must enforce the agreement.").

Marie Struble also asserts that the District Court's order is in conflict with the "Order issued as the Settlement and Release approved by the Court." It seems she is referring to the original draft of the stipulation written by the United States. This was not a binding version of the draft, nor was it approved by the Court. Rather, as soon as it was understood that Marie Struble construed this draft stipulation to allow her to continue her claims against Deutsche Bank, the United States drafted a revised version of that stipulation, making it more explicit that only cross-claims against Dale Struble could continue. There was no basis for the District Court to remand, as there were no remaining cross-claims against Deutsche Bank.

Accordingly, we will affirm the judgment of the District Court