

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-22-2002

# M.B. v. Quarantillo

Precedential or Non-Precedential: Precedential

Docket No. 02-2328

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"M.B. v. Quarantillo" (2002). *2002 Decisions.* Paper 530.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/530

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

        Filed August 22, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-2328

M.B.,
        Appellant

v.

ANDREA QUARANTILLO,
IMMIGRATION AND NATURALIZATION SERVICE
        Appellees

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civ. No. 02-cv-00463)
District Judge: Honorable John C. Lifland

Audio Teleconference
June 14, 2002

Before: BECKER, Chief Judge, FUENTES, and
WEIS, Circuit Judges.

(Filed: August 22, 2002)


        Blair G. Connelly, Esquire
         (ARGUED)
        Scott Louis Weber, Esquire
        John Ducoff, Esquire
        Latham & Watkins
        One Newark Center, 16th Floor
        P.O. Box 10174
        Newark, New Jersey 07101-3174

        Attorneys for Appellant M.B.

        Peter G. O'Malley, Esquire
         (ARGUED)
        Assistant United States Attorney
        Christopher J. Christie, Esquire
        United States Attorney
        970 Broad Street, Suite 700
        Newark, New Jersey 07102

        Attorneys for Appellees
        Andrea Quarantillo and the
        Immigration and Naturalization
        Service

OPINION OF THE COURT

WEIS, Circuit Judge.

In this appeal we conclude that the Attorney General did not act arbitrarily or capriciously in denying an alien's request to have his dependency status determined by a state juvenile court. We also conclude that the federal courts have jurisdiction to review the ruling under the Administrative Procedure Act, 5 U.S.C. S 701 et seq. Accordingly, we will affirm the District Court's order denying relief to the plaintiff alien.

Plaintiff is a young man, allegedly a national of Algeria1

_____

1. There is some indication in the record that the plaintiff may be a citizen of Morocco.

2

who arrived in Newark, New Jersey as a stowaway on a ship that had departed from La Spezia, Italy. The INS apprehended him on arrival, and he has been detained at the Elizabeth Detention Center in Elizabeth, New Jersey ever since. Plaintiff applied for asylum, but his request was denied by an immigration judge and that decision was affirmed by the Board of Immigration Appeals.

Plaintiff asserts that he lived with his parents in Algeria until they were both killed by a bomb when he was about ten years of age. He then lived with an aunt in Algeria until he was twelve years old, at which time she forced him to leave. He went to other countries, and then lived in Italy for three years where he worked as a farm laborer.

At the time of his initial detention, plaintiff carried documents from a proceeding before the Italian Labor & Immigration Department in which he gave his date of birth as June 25, 1982. However, he told the INS on his initial interview that he was born on July 25, 1984. Noting the conflict over the birth date, the INS had a dentist x-ray the plaintiff's teeth and wrist. Based on his reading of the x-rays, the dentist opined that plaintiff was more than 18 years of age.

After his unsuccessful attempt at asylum, plaintiff sought special immigration juvenile status under 8 U.S.C.S 1101(a)(27)(J)(I). This provision applies to immigrants who have been declared dependent by a juvenile court that has deemed them eligible for long-term foster care because of abuse, neglect or abandonment.

Because plaintiff was in the custody of the INS, the Attorney General's consent was required before a juvenile court could obtain jurisdiction of the dependency claim. The district director of the INS, acting on behalf of the Attorney General, denied the consent request. In a letter dated July 31, 2001, the director pointed out that under New Jersey law for purposes of juvenile court jurisdiction, "child" meant a person under 18 years of age. Based on

plaintiff's statement to Italian authorities that he was born in 1982, he would have been 19 years old at the time of his request. Moreover, the director noted, the INS had not been provided evidence that the plaintiffs' parents had been killed or that his aunt had abused him.

3

The director's letter concluded:

> "Given the circumstances, it does not appear that you have provided the proper documentation needed for a favorable consideration to have [plaintiff's] jurisdiction transferred to a New Jersey juvenile court. Therefore, your request is denied. . . . [Y]our request was refused in accordance with regulations issued under the Immigration and Naturalization Act, as amended (INA), existing INS policy, and New Jersey State Law."

In response to a request for reconsideration, the district director wrote another letter dated October 5, 2001, repeating that as a stowaway the plaintiff was inadmissible for entry into the United States pursuant to 8 U.S.C. S 1182(a)(6)(D). The letter elaborated on Italian documents charging plaintiff with violating the immigration law of that country. In addition, the director cited 8 C.F.R.S 204.11(d), which requires documentary evidence confirming an applicant's age, and further noted that New Jersey law limited the juvenile court's authority to persons under the age of 18. Concluding that plaintiff had failed to submit any new evidence, the director again denied the request to grant juvenile court jurisdiction.

Plaintiff then filed this suit in the District Court for the District of New Jersey, seeking declaratory and injunctive relief.2 After extended oral argument, the District Court determined that the INS order was reviewable under the Administrative Procedure Act. The Court further decided that the INS action was neither arbitrary nor capricious in view of plaintiff's failure to supply documentary evidence in support of his application. The Court dismissed the complaint for failure to state a claim.

On appeal, plaintiff contends that the INS has no authority to determine whether an individual meets the jurisdictional age of juvenile court, but is limited by its

_____

2. We acknowledge the excellent presentation of plaintiff's counsel Latham & Watkins in their pro bono representation in his behalf. The firm and its lawyers assigned to this case acted in accordance with the highest traditions of the bar and we commend their dedication to the profession and the cause of justice.

4

regulations to determine only whether the person is under the age of twenty-one. In addition, he argues that the

requirement of documentary evidence of age is contrary to the congressional intent underlying the special immigration provisions for juveniles. The INS contends that its decision is not subject to judicial review.3 We will discuss the jurisdictional issue first.

I.

Initially, we recognize that the Immigration and Naturalization Act restricts judicial review in certain circumstances, and we must determine whether those limitations apply here.

In Reno v. American-Arab Anti-Discrimination Committee, 525 U.S. 471 (1999), the Supreme Court reviewed 8 U.S.C. S 1252(g), which denies judicial review of certain immigration matters. Section 1252(g) provides that no court shall have jurisdiction over cases "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders . . . ." Carefully parsing the text, the Court concluded that that provision applied only to three specific decisions or actions by the Attorney General: those "commencing proceedings," "adjudicating cases" or "executing removal orders." American-Arab Anti-Discrimination Comm., 525 U.S. at 482.

The Court also noted that the statute's other subsections insulate from review the Attorney General's exercise of discretion in a number of contexts. Id. at 486-87. This Court, for example, has held that we lack jurisdiction to review a deportation order pursuant to 8 U.S.C. S 1101a(a)(10), now codified at 8 U.S.C. S 1252(a)(2)(C). Salazar-Haro v. INS, 95 F.3d 309, 310-11 (3d Cir. 1996).

Having thoroughly reviewed the statute, we are not persuaded that it precludes jurisdiction in the case before us. Significantly, the INS does not invoke any specific

_____

3. This Court heard oral argument on an emergency basis on June 14, 2002 and from the bench affirmed the District Court's order. This Opinion explains the basis for the ruling.

provision of the INA as bearing on this Court's authority to review the Attorney General's actions here. That, however, does not end the jurisdictional inquiry. We must now examine the Administrative Procedure Act, which the plaintiff contends permits us to review the Attorney General's refusal of consent to juvenile court jurisdiction.

The Act provides in broad terms that a "person suffering legal wrong because of agency action . . . is entitled to judicial review . . . ." 5 U.S.C. S 702. That expansive language, however, is blunted by section 701(a)(2), which limits this review "to the extent that . . . (2) agency action is committed to agency discretion by law."

The Supreme Court has read the Administrative Procedure Act as embodying a basic presumption of judicial review. In Lindahl v. Office of Personnel Management, 470 U.S. 768, 778 (1985), the Court said, "[w]e have often noted that 'only upon a showing of "clear and convincing evidence" of a contrary legislative intent should the courts restrict access to judicial review.' " (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 141 (1967)).

On the other hand, the Court significantly weakened the force of that pronouncement when it referred to its previous statement as " 'just' a presumption." Lincoln v. Vigil, 508 U.S. 182, 190 (1993). The Court explained that review is not available "in those rare circumstances where the relevant statute" is so drafted " 'that a court would have no meaningful standard against which to judge the agency's exercise of discretion.' " Id. at 191 (quoting Heckler v. Chaney, 470 U.S. 821, 830 (1985)). In such a situation, the statute can be read "to have committed the decisionmaking to the agency's judgment absolutely." Id. (internal quotations omitted). That approach is rooted in the language of Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 410 (1971), which explained that when there is "no law to apply," there can be no judicial review.[4]

_____

4. Professor Davis, an acknowledged expert in administrative law, argued that judges should be able to apply such "law" as justice, fairness and reasonableness requires in deciding whether agency action was arbitrary or capricious. Kenneth Culp Davis, No Law to Apply, 25 San Diego L. Rev. 1 (1988) (criticizing Chaney); see also Ronald M. Levin, Understanding Unreviewability in Administrative Law , 74 Minn. L. Rev. 689 (1990) (summarizing availability of judicial review of agency decisions).

There are circumstances, however infrequent, in which review is not available. See, e.g., Lincoln, 508 U.S. 182 (review precluded where agency's discretion is involved in allocating appropriated funds); Webster v. Doe , 486 U.S. 592 (1988) (CIA director's decision to terminate employee on national security grounds not reviewable); ICC v. Brotherhood of Locomotive Eng'rs, 482 U.S. 270 (1987) (ICC's refusal to grant reconsideration of a prior ICC order not reviewable); Heckler v. Chaney, 470 U.S. 821 (1985) (FDA decision refusing to take various enforcement actions not subject to review); Local 2855, AFGE (AFL-CIO) v. United States, 602 F.2d 574 (3d Cir. 1979) (army's decision to contract stevedoring work not reviewable). See also Harmon Cove Condo. Ass'n, Inc. v. Marsh, 815 F.2d 949 (3d Cir. 1987) (Court refused to grant mandamus directing Secretary of the Army to enforce compliance with a permit because of lack of guidelines).

Nevertheless, the "no law to apply" threshold is not insurmountable. The Supreme Court's comments on agency discretion in an immigration case are instructive. The Court

held that although its discretion may be unfettered at the outset, if an agency "announces and follows -- by rule or by settled course of adjudication -- a general policy by which its exercise of discretion will be governed, an irrational departure from that policy . . . could constitute action that must be overturned as 'arbitrary, capricious,[or] an abuse of discretion' within the meaning of the Administrative Procedure Act, 5 U.S.C. S 706(2)(A)." INS v. Yang, 519 U.S. 26, 32 (1996).

We have previously distinguished Chaney, where an agency's decision declining to enforce substantive provisions in its enabling act was nonreviewable, from a case in which an agency had taken affirmative steps to adjudicate a breach of contract claim. Williams v. Metzler, 132 F.3d 937, 944-45 (3d Cir. 1997). In any event, when deciding whether review of agency action is reviewable, we have adhered to the Supreme Court's presumption in favor of judicial action. Id. at 943-44.

Thus, this Court has held that where regulations list factors an agency must consider in reaching a decision, there is sufficient guidance for a court to determine

whether the agency had acted arbitrarily and capriciously. Davis Enters. v. United States Envtl. Prot. Agency, 877 F.2d 1181 (3d Cir. 1989); Chong v. Director, United States Info. Agency, 821 F.2d 171 (3d Cir. 1987). See also Hondros v. United States Civil Serv. Comm'n, 720 F.2d 278, 294-95 (3d Cir. 1983) (personnel officer's official memoranda established policy decisions that restricted agency discretion and permitted judicial review).

In this case, regulation 8 C.F.R. S 204.11, adopted by the INS, sets out the material matters to be included in a petition for special immigrant juvenile status. In order for an alien to be eligible for that classification, he must be under 21 years of age, unmarried, and found by a juvenile court to be a dependent. 8 C.F.R. S 204.11(c)(1)-(6). In addition, documentary evidence of the alien's age and a juvenile court order must be attached to his application. 8 C.F.R. S 204.11(d)(1)-(2).

In addition to that regulation, Thomas E. Cook, acting assistant commissioner of the INS, issued a Memorandum dated July 9, 1999, clarifying interim field guidance with respect to special immigrant juvenile cases. The Memorandum discusses situations in which applicants are in INS custody, as well as those in which they are not.

The Memorandum explains that when the applicant is in INS custody, the consent of the Attorney General must be secured before juvenile court proceedings begin. In general, consent should be given if doing so served the best interests of the child, and if the child would be eligible for special immigrant juvenile classification.

We are persuaded that regardless of whether the regulation and the Cook Memorandum properly construe the statute -- and putting aside the question of what deference, if any, we should grant them5 -- they do supply "some law to apply." Accordingly, judicial review is

_____

5. The fact that certain memos, policies, guidelines, or manuals could constitute "law" for jurisdictional purposes has no bearing on whether the Court owes some deference to them in ruling on the merits of an appeal from an agency action. The two situations are distinct and must receive different review.

available. See Concerned Residents of Buck Hill Falls v. Grant, 537 F.2d 29, 35-36 (3d Cir. 1976).

The details of 8 C.F.R. S 204.11(c) meet the Davis, Chong, and Hondros description of factors that the INS must observe; thus, the regulation is unlike that found in Local 2855, which granted broad policy discretion to dispose of appropriated funds. A district court opinion following our precedents found jurisdiction in a factual situation similar to the one now before us. Yeboah v. INS, 2001 WL 1319544 (E.D. Pa. Oct. 26, 2001).

Accordingly, we conclude that we have jurisdiction to review the validity of the INS's refusal to yield jurisdiction to the juvenile court.

II.

We turn then to the terms of the Immigration and Naturalization Act. In its current version and its former text enacted in 1990, the statute defined special immigrant juveniles as immigrants present in the United States whom a juvenile court has determined to be dependent or who have been placed in the custody of a state agency for long-term foster care because of abuse, neglect or abandonment. 8 U.S.C. S 1101(27)(J)(I). In addition, it must have been determined that it would not be in the best interest of the juvenile to be returned to his home country. Id . S 1101(27)(J)(ii).

Being granted such status is, of course, quite advantageous to an alien. As the Court noted in Gao v. Jenifer, 185 F.3d 548, 551 n.1 (6th Cir. 1999), granting a special immigrant juvenile request enables that individual to apply for permanent resident status, although the latter classification is discretionary and conditional. Gao, 185 F.3d at 556-57.

Before its amendment in 1997, the statute did not prevent a state court from assuming jurisdiction over a juvenile immigrant, even one in the legal custody of the INS. Id. at 553. In 1997, however, an amendment to the INA required the Attorney General to "expressly consent" to a juvenile court's dependency order. 8 U.S.C.

S 1101(27)(J)(iii). In addition, the amendment required the Attorney General to specifically consent to the jurisdiction of the juvenile court "to determine the custody status or placement of an alien in the actual or constructive custody of the Attorney General . . . ." 8 U.S.C. S 1101(27)(J)(iii)(I).

The legislative history confirms that the revision in the statute was intended to curtail the granting of special immigrant juvenile status. The conference report on the amendment states that:

> "[t]he language has been modified in order to limit the beneficiaries of this provision to those juveniles for whom it was created, namely abandoned, neglected, or abused children, by requiring the Attorney General to determine that neither the dependency order nor the administrative or judicial determination of the alien's best interest was sought primarily for the purpose of obtaining the status of an alien lawfully admitted for permanent residence, rather than for the purpose of obtaining relief from abuse or neglect."

H.R. Rep. No. 105-405, at 2981 (1997), 1997 WL 712946, at 130.

The legislative history demonstrates an intent to remove immigration decisions from the exclusive control of juvenile courts and the social agencies affiliated with them. Some examples of the state courts' then-dominant role in status determination are illustrated in Gao v. Jenifer , 185 F.3d 548 and Yu v. Brown, 92 F. Supp. 2d 1236 (D. N.M. 2000).

The regulation on which the plaintiff so heavily relies, 8 C.F.R. S 204.11, was adopted in 1993, before the amendment to the special immigrant juvenile provision was enacted. It is significant that the regulation applies to applications for special status requested after the juvenile court has made the necessary adjudication of dependency, long-term foster care and the best interest of the child. The application must be accompanied by juvenile court orders and other documents, such as a birth certificate establishing the alien's age. An additional requirement -- one on which the plaintiff seizes -- is a statement that the applicant is under 21 years of age.

At this point in the proceedings the plaintiff is not in a position to file a special immigrant juvenile petition, and so is pursuing the preliminary steps to obtain the director's consent to juvenile court jurisdiction. As can be seen, the regulation does not directly bear on a request for permission to apply to a juvenile court. However, the regulation can have a bearing on the director's future ruling on whether to give effect to a juvenile court decision if

consent to its jurisdiction is granted.

Apparently because the regulation lacked an explicit connection to the consent process, the INS promulgated the Cook Memorandum in 1999. It authorized the district directors, in consultation with their district counsel, to give consent on behalf of the Attorney General. The Memorandum also distinguishes between juveniles in INS custody and those not so classified.

In cases where the alien is in the custody of the INS, the Cook Memorandum requires that requests for consent to a juvenile court's jurisdiction be in writing. Thereafter,

> "The district director, in consultation with the district counsel, should consent to the juvenile court's jurisdiction if:
>
> 1) it appears that the juvenile would be eligible for SIJ status if a dependency order is issued; and
>
> 2) in the judgment of the district director, the dependency proceeding would be in the best interest of the juvenile."

The Cook Memorandum thus appears to anticipate that if consent is granted, a resulting juvenile court order would make the alien eligible for the benefits of a special immigrant juvenile. According to the Memorandum, however, a petition for that status should include, in addition to records of the juvenile court proceeding,

> (1) evidence of the juvenile's date and place of birth;
>
> (2) evidence of the juvenile's date and manner of entry into the United States;
>
> (3) evidence of the juvenile's current immigration status.

11

Therefore, in exercising discretion to deny jurisdiction to the juvenile court, the district director, in consultation with legal counsel, can reasonably consider the requirements of a petition for special immigrant juvenile classification. Based on the evidence in the INS's possession that contradicted plaintiff's version of his birthdate and native country, the director could have reasoned that plaintiff would not be able to produce the documentary evidence required for a special immigrant juvenile application. Thus, allowing the juvenile court proceeding to go forward would have amounted to endorsing an exercise in futility.

The district director acknowledged that she had considered New Jersey law in connection with her decision. Consequently, the juvenile court's 18-year age limitation was pertinent. We are not persuaded by plaintiff's argument that the regulatory history of 8 C.F.R. S 204.11

demonstrates that the INS had ceded the right to consider as relevant any age other than one under 21. That concession was made under the 1990 version of the statute, before Congress limited availability of juvenile court jurisdiction by requiring the consent of the Attorney General. To the extent that the regulation is in conflict with the statutory amendment, the latter must control. The director also noted that the plaintiff was a stowaway and thus had not legally entered the United States. This is another factor that, according to the Cook Memorandum, would be pertinent to a special immigrant juvenile petition.

Although we have held that "for purposes of review," a Handbook and Guide prepared by an agency "serve only as indicia of whether the evaluation procedures adopted in a particular case are 'arbitrary and capricious,' " see Concerned Citizens of Buck Hill Falls, 537 F.2d at 38, here we have more. The district director's refusal to consent, based on factors that would be critical to an expected future application for special immigrant juvenile status, is well within the discretion permitted by the Cook Memorandum. We reject the plaintiff's contention that the regulation requires that an application for consent must be accepted for all petitioners under 21 years of age and that the district director was thus denied the authority to consider the New Jersey jurisdictional limit of 18 years of age.

12

In sum, we believe that the District Director did not act arbitrarily and capriciously in refusing consent to the juvenile court's jurisdiction. Both the statute and the regulation implicitly require an alien applying for special immigrant juvenile status to be young enough to qualify for a dependency order under state law. Neither the statute nor the regulation expressly prohibit the Attorney General from denying consent because the alien is too old to be eligible for a dependency order. For the District Director to withhold consent on the ground that the alien does not satisfy one of the statutory eligibility requirements, even if it is derived from state law and would ultimately be adjudicated by a state juvenile court, is not arbitrary and capricious.

Accordingly, we will affirm the Order of the District Court.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

13