**F.L., Plaintiff,**

v.

**Tommy THOMPSON, et al., Defendants.**

**No. CIV.A. 03–1989(ESH).**

United States District Court, District of Columbia.

Oct. 3, 2003.

Steven H. Schulman, Andrew Deryl Morton, Latham & Watkins, LLP, Washington, DC, for Plaintiff.

Stratton Christopher Strand, United States Attorney's Office for the District of Columbia, Washington, DC, for Defendants.

## MEMORANDUM OPINION

HUVELLE, District Judge.

The issue plaintiff presents is a narrow one. An unaccompanied minor in United States custody asks the Court to decide whether the Homeland Security Act of 2002 ("HSA"),[1] in its allocation of the functions formerly performed by the Immigration and Naturalization Service ("INS") to the Department of Homeland Security

("DHS") and the Office of Refugee Resettlement ("ORR"), gives ORR the sole authority to grant him consent to request a state juvenile court to exercise jurisdiction over him. ORR has declined to decide whether to grant plaintiff's request for such consent, instead transferring his request to DHS. Plaintiff seeks a declaration and a temporary restraining order requiring the ORR to issue a decision on his request for consent by October 7, 2003.[2]

Having reviewed the relevant statutes and pleadings and heard argument on September 30, the Court is persuaded that DHS has been granted authority to grant or deny consent to unaccompanied minors for state court jurisdiction. Accordingly, plaintiff's request is denied, and the complaint will be dismissed.[3]

## BACKGROUND

Plaintiff is a seventeen-year old citizen of Tanzania who came to the United States in July 2001 on a tourist visa with other young Tanzanians to attend an International Boy Scout Jamboree in Virginia. As the Jamboree drew to a close, plaintiff and three other Tanzanian Scouts left the group without notifying the Scoutmaster. After hearing media reports describing them as missing and sought by the Federal Bureau of Investigation, they turned themselves in to the District of Columbia police, who in turn transferred them into the custody of the INS.

1. The Homeland Security Act of 2002, Pub.L. No. 107–296, 116 Stat. 2153, was signed into law on November 25, 2002.

2. Time is of the essence for plaintiff because, if he obtains consent, he must appear before a juvenile court in Michigan before he turns eighteen on October 11, 2003, since that court loses jurisdiction over him on that date.

3. The defendants' opposition to plaintiff's request for a temporary restraining order includes a motion to dismiss. (See Defendants' Consolidated Motion to Dismiss and Opposition to Plaintiff's Motion for Temporary Restraining Order ["Defs.' Opp."].) As plaintiff acknowledges, this case presents only legal issues with no need for factual development, and thus, it is appropriate to decide the government's motion to dismiss the complaint. (See Plaintiff F.L.'s Memorandum in Support of Motion for Temporary Restraining Order, or Preliminary and/or Permanent Injunction, and Declaratory Judgment ["Pl.'s Mem."] at 1 n. 1.)

While awaiting the resolution of his immigration status over the past two years, plaintiff has remained in United States custody.[4] He is currently living with a foster family in Michigan. The federal government funds his foster care placement as his custodian, but this funding will expire when he turns eighteen on October 11, 2003. Plaintiff wishes to request a Michigan juvenile court for a declaration of dependency, which would include a determination of his eligibility for long-term foster care available under state law.

Acquisition of this declaration of dependency from a state court is also a prerequisite to application for a special immigrant juvenile ("SIJ") visa, available to certain unmarried aliens under the age of twenty-one. 8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11(c). SIJs are unaccompanied minors who have been found eligible by state courts for long-term foster care due to abuse, neglect or abandonment suffered in their home countries, where family unification is not an option, and return to their home country would not be in their best interest. 8 U.S.C. § 1101(a)(27)(J)(i), (ii); 8 C.F.R. § 204.11. If he obtains a dependency order from the state court, plaintiff will apply for an SIJ visa, which would protect him from deportation.

Because plaintiff is in United States custody, before he may request a declaration of dependency from the Michigan court, he first must obtain consent to the jurisdiction of the juvenile court from the United States Attorney General. 8 U.S.C. § 1101(a)(27)(J)(iii)(I).[5]

Under the recently enacted HSA, ORR replaces INS as plaintiff's custodian. (Pl.'s Mem. at 9.) Plaintiff, believing that ORR is now the agency with the sole authority to consent to the state court's exercise of jurisdiction, submitted his request for such consent to ORR Director, defendant Nguyen Van Hanh, by letter dated August 29, 2003. (Pl.'s Mem., Ex. 1.) ORR responded on September 5, 2003, stating that because the HSA did not "specifically address the SIJ status process," ORR and the DHS "are discussing the two agencies' roles and responsibilities in the process." (Pl.'s Mem., Ex. 2.) Pending clarification of the roles and responsibilities, Hanh indicated that ORR is forwarding all requests concerning SIJ cases to DHS. (*Id.*)

On September 25, 2003, plaintiff filed a complaint with this Court along with a motion seeking both a declaratory judgment establishing ORR's statutory responsibility to issue a decision on his request for consent and a temporary restraining order or injunction requiring ORR to render a decision on or before October 7, 2003. Receiving a timely consent decision is crucial to plaintiff, as the Michigan court only has jurisdiction to issue a dependency order prior to plaintiff's eighteenth birthday. Mich. Comp. Laws § 712A.2(b)(1).[6]

---

4. On June 28, 2002, the INS commenced removal proceedings against plaintiff. (Defs.' Opp., Ex. B.) He conceded that he was removable and sought asylum. (*Id.*) An immigration judge denied his asylum petition on February 25, 2003, and plaintiff's appeal of that decision is currently pending. (Defs.' Opp. at 4; Ex. B.) As long as his immigration status is unresolved, he cannot be deported. 8 CFR § 1003.6.

5. In other words, the statute provides a three-step process for an applicant to obtain a SIJ visa. The applicant must 1) acquire specific consent from the Attorney General for juvenile court jurisdiction over him, 2) obtain a dependency order from the juvenile court, and 3) apply for a SIJ visa through DHS. 8 U.S.C. § 1101(27)(J).

6. Although plaintiff can no longer appeal to the juvenile court for a declaration of dependency once he reaches eighteen, once he has obtained that declaration he is eligible to apply for SIJ status as long as he is not married

Following the filing of this complaint, a DHS deputy assistant director wrote plaintiff's counsel on September 29, 2003, confirming receipt of plaintiff's request for consent from ORR. The letter reiterates the agencies' position that they "have not reached a final decision regarding which agency will have responsibility for making SIJ consent decisions," but that in the interim, "ORR and DHS have decided that DHS should continue to make SIJ consent decisions." (Defs.' Mot., Ex. A at 1.) The letter presents DHS's interpretation of the HSA and explains the basis for its conclusion that it is the appropriate agency to address plaintiff's request for consent. It also states that plaintiff's consent request fails to provide sufficient information to allow a determination as to whether plaintiff would meet the "basic eligibility requirements for SIJ status," but that if such supporting information were to be submitted by October, 1, 2003, DHS "would make every effort to provide a decision" by October 7. (*Id.* at 2.)

At oral argument on September 30, defendants' counsel conceded that if no further evidence was forthcoming, DHS would deny plaintiff's consent request. (9/30/03 Tr. at 43–44.) Plaintiff's counsel represented to the Court that plaintiff will not submit any further information to supplement his consent request. (*Id.* at 54–55.) Plaintiff claims injury, not because of DHS's denial of his request, but because only ORR, and not DHS, has the authority to grant or deny a request for consent.

## STATUTORY FRAMEWORK

The statutory provision establishing SIJ status was enacted in 1990 as part of the Immigration and Nationality Act ("INA") of 1952, 8 U.S.C. § 1101(a)(27)(J). It establishes special status for an immigrant

(i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State and who has been deemed eligible by that court for long-term foster care due to abuse, neglect, or abandonment; [and]

(ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence.

The statute as enacted did not prevent a state court from assuming jurisdiction over a juvenile immigrant in the legal custody of the INS. *See M.B. v. Quarantillo,* 301 F.3d 109, 114 (3d Cir.2002). In 1997, Congress amended the statute to add a prerequisite of Attorney General consent to the state court's exercise of jurisdiction by mandating that "no juvenile court has jurisdiction to determine the custody status or placement of an alien in the actual or constructive custody of the Attorney General unless the Attorney General specifically consents to such jurisdiction." 8 U.S.C. § 1101(a)(27)(J)(iii)(I); Pub.L. 105–119, § 113 (1997).

By Memorandum dated July 9, 1999 (the "Cook Memorandum"), the Acting Assistant Commissioner of the INS's Adjudications Division, Thomas Cook, authorized INS district directors, in consultation with legal counsel, to give consent to minors for juvenile court jurisdiction on behalf of the Attorney General. The Cook Memorandum indicates that the

district director, in consultation with the district counsel, should consent to the juvenile court's jurisdiction if: 1) it ap-

and under twenty-one years of age. 8 C.F.R.     § 204.11(c)(1).

pears that the juvenile would be eligible for SIJ status if a dependency order is issued; and 2) in the judgment of the district director, the dependency proceeding would be in the best interest of the juvenile.

(Cook Memorandum at 2.)

When Congress enacted the HSA in November 2002, it abolished the INS and assigned, *inter alia,* responsibility for all "adjudications performed by the [INS]" to the Bureau of Citizenship and Immigration Services, a division of the newly established DHS. HSA §§ 451(b), 471(a), 6 U.S.C.A. §§ 271(b), 291(a). The HSA transferred to the ORR, an agency within the Department of Health and Human Services ("HHS"), the "functions under the immigration laws of the United States with respect to the care of unaccompanied alien children that had been vested by statute in, or performed by ... [the INS]." HSA § 462(a), 6 U.S.C.A. § 279(a).[7] Within the section transferring authorities to ORR, Congress expressly protected DHS's right to adjudicate immigration benefits:

Nothing in this section may be construed to transfer the responsibility for adjudicating benefit determinations under the Immigration and Nationality Act (8 U.S.C. 1101 et seq.) from the authority of any official of the Department of

7. More specifically, the following responsibilities were transferred to ORR pursuant to the HSA:

(A) coordinating and implementing the care and placement of unaccompanied alien children who are in Federal custody by reason of their immigration status, including developing a plan to be submitted to Congress on how to ensure that qualified and independent legal counsel is timely appointed to represent the interests of each such child, consistent with the law regarding appointment of counsel that is in effect on the date of the enactment of this Act;

(B) ensuring that the interests of the child are considered in decisions and actions relating to the care and custody of an unaccompanied alien child;

(C) making placement determinations for all unaccompanied alien children who are in Federal custody by reason of their immigration status;

(D) implementing the placement determinations;

(E) implementing policies with respect to the care and placement of unaccompanied alien children;

(F) identifying a sufficient number of qualified individuals, entities, and facilities to house unaccompanied alien children;

(G) overseeing the infrastructure and personnel of facilities in which unaccompanied alien children reside;

(H) reuniting unaccompanied alien children with a parent abroad in appropriate cases;

(I) compiling, updating, and publishing at least annually a state-by-state list of professionals or other entities qualified to provide guardian and attorney representation services for unaccompanied alien children;

(J) maintaining statistical information and other data on unaccompanied alien children for whose care and placement the Director is responsible, which shall include—(i) biographical information, such as a child's name, gender, date of birth, country of birth, and country of habitual residence; (ii) the date on which the child came into Federal custody by reason of his or her immigration status; (iii) information relating to the child's placement, removal, or release from each facility in which the child has resided; (iv) in any case in which the child is placed in detention or released, an explanation relating to the detention or release; and the disposition of any actions in which the child is the subject;

(K) collecting and compiling statistical information from the Department of Justice, the department of Homeland Security, and the Department of State on each department's actions relating to unaccompanied alien children; and

(L) conducting investigations and inspections of facilities and other entities in which unaccompanied alien children reside.

HSA § 462(b)(A)-(L), 6 U.S.C.A. § 279(b)(1)(A–L).

Justice, the Department of Homeland Security, or the Department of State. HSA § 462(c), 6 U.S.C.A. § 279(c).

## LEGAL ANALYSIS

### I. Jurisdictional Issues

The government raises several jurisdictional issues, none of which impedes the Court's ability to decide this case on the merits.

■ The argument that 8 U.S.C. § 1252(g) prohibits the Court from establishing subject matter jurisdiction is unpersuasive. This section bars jurisdiction over cases "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders ...." The Supreme Court has concluded that this provision applies only to these three discrete actions, *Reno v. American–Arab Anti–Discrimination Comm.*, 525 U.S. 471, 482, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999), and the Third Circuit has rejected the very argument that the defendants make here—that this section applies to the review of the INS's refusal to issue consent to an unaccompanied minor. *M.B.*, 301 F.3d at 111. For the reasons set forth by the Third Circuit in *M.B.*, this Court also concludes that § 1252(g) does not preclude the exercise of jurisdiction here.

■ Defendants also challenge plaintiff's standing. To meet the "irreducible constitutional minimum" of the standing requirements drawn from Article III, plaintiff bears the burden of showing (1) a concrete and particularized actual or imminent injury (2) that is fairly traceable to defendant's conduct (3) which a favorable court decision will redress. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

Plaintiff meets these requirements. He has a legally protected interest in obtaining a decision from the properly authorized governmental agency as to whether the federal government will grant its consent to a state court's exercise of jurisdiction over him. *See Yeboah v. United States Dept. of Justice*, 345 F.3d 216, 223 (3rd Cir.2003); *see also Blazina v. Bouchard*, 286 F.2d 507, 511 (3d Cir.1961) ("An [INS] applicant has a right to have his application considered."). Protection of this right requires that the agency with legal authority to grant or deny consent evaluate plaintiff's request and issue a response. As acknowledged by defendants, an act by an agency with no authority to perform that act is clearly of no legal effect and is contrary to law in contravention of the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq.* (9/30/03 Tr. at 36–37.)

Thus, plaintiff's injury occurs when he fails to receive a consent decision from ORR. ORR's letter notified plaintiff that it will not act upon his consent request. (Pl.'s Mem., Ex. 2.) Further, DHS has represented to the Court that if plaintiff fails to submit evidence to support his consent request, it will deny his request, and plaintiff's counsel has stated that he will not submit any additional information to DHS. (9/30/03 Tr. at 43–44, 54–55.) This situation presents a realistic danger of injury sufficient to establish standing. *See Northwest Airlines, Inc. v. Fed. Aviation Admin.*, 795 F.2d 195, 201 (D.C.Cir. 1986) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 304, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979)) ("One does not have to await the consummation of threatened injury to obtain preventative relief. If the injury is *certainly impending* that is enough.").

■ For similar reasons, defendants' argument that plaintiff's claim is not ripe for review is unavailing. Under the APA,

the district court's authority to review the conduct of an agency is limited to cases challenging "final agency action." 5 U.S.C. § 704. "An agency action is deemed final if it is 'definitive' and has a 'direct and immediate ... effect on the day-to-day business' of the party challenging the agency action." *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n,* 324 F.3d 726, 731 (D.C.Cir.2003) (quoting *FTC v. Standard Oil Co. of Cal.,* 449 U.S. 232, 243, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980)). Agency action is considered final to the extent that it denies a right. *See Role Models Am., Inc. v. White,* 317 F.3d 327, 331–32 (D.C.Cir. 2003). Although the government has not yet made a final decision which agency will handle consent decisions on a permanent basis, it has definitively decided that DHS will rule on plaintiff's request. Plaintiff's argument that this decision denies him the right to receive a decision by a duly-authorized agency is therefore ripe for review.

## II. Construction of the HSA

### A. Standard of Review

Under the APA, the Court must "compel agency action unlawfully withheld," and "hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary capricious, an abuse of discretion, or otherwise not in accordance with law ...." 5 U.S.C. § 706(1), (2)(A).

■ Defendants ask the Court to defer to the agencies' determination under step two of the standards articulated in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), which requires a court to defer to an agency's interpretation of an ambiguous statute as long as it is "based on a permissible construction." While *Chevron* deference is not necessarily limited to agency-promulgated regulations, interpretations contained in documents such as policy statements, agency manuals and enforcement guidelines "do not warrant *Chevron*-style deference." *Public Citizen, Inc. v. U.S. Dept. of Health and Human Serv.,* 332 F.3d 654, 660 (D.C.Cir.2003) (quoting *Christensen v. Harris County,* 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000)). ORR's decision not to review plaintiff's consent request is embodied in the correspondence from DHS and ORR informing plaintiff of the agencies' tentative decision that his consent request will be handled by DHS pending further consultation and review of the issue. Although there is evidence of a current DHS practice to review all consent requests received by either DHS or ORR (*see* Defs.' Opp., Ex. 3), there is nothing that has been issued by either agency that is either sufficiently definitive or formal enough to be entitled to deference under *Chevron.*

■ Although *Chevron* deference is unwarranted, the agencies' tentative decision may be due some degree of deference under *Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944). Their interpretation of the HSA, presented in DHS's September 29, 2003 letter to plaintiff, "remains eligible to claim respect according to its persuasiveness." *Public Citizen,* 332 F.3d at 662 (quoting *United States v. Mead Corp.,* 533 U.S. 218, 221, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001)). Moreover, although courts review purely legal findings *de novo* to ensure that an agency does not exceed its authority, an agency's statutory construction is almost always accorded some deference. *Office of Communication of the United Church of Christ v. FCC,* 707 F.2d 1413, 1422–23 n. 12 (D.C.Cir.1983); *Beverly Enter., Inc. v. Herman,* 130 F.Supp.2d 1, 12 (D.D.C. 2000). Finally, the Supreme Court has stated that "judicial deference to the Exec-

utive Branch is especially appropriate in the immigration context where officials 'exercise especially sensitive political functions that implicate questions of foreign relations.'" *INS v. Aguirre–Aguirre,* 526 U.S. 415, 425, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999) (citation· omitted).[8]

■ Since the defendants' interpretation of the HSA deserves little deference, the Court's task is to "examine the ... text, structure, legislative history and purpose" of the relevant statutes to determine their proper construction. *See Public Citizen,* 332 F.3d at 662 (quoting *Bell Atlantic Telephone Cos. v. FCC,* 131 F.3d 1044, 1047 (D.C.Cir.1997)).

### B. Does ORR or DHS Have Authority to Consent?

As a preliminary matter, it is important to note that much of what plaintiff argues is not disputed by defendants. The parties agree that Congress divided the functions regarding juvenile aliens formerly administered by INS between DHS and ORR, as reflected in sections 451(b)(5), 6 U.S.C.A. § 271(b)(5) and 462, 6 U.S.C.A. § 279 of the HSA. Subsections A through L of section 462 enumerate the specific juvenile care responsibilities that were transferred to the ORR, and section 451(b)(5), 6 U.S.C.A. § 271(b)(5) places the authority to adjudicate immigration benefits, including SIJ visas under 8 U.S.C. § 1101(a)(27)(J), with DHS.[9] This authority is expressly withheld from ORR in section 462(c), 6 U.S.C.A. § 279(c).

Nor do defendants dispute plaintiff's assertion that Congress intended to sever the "responsibilities of prosecuting and caring for these children" from INS's adjudicatory and enforcement functions to insure "impartial consideration of the children's best interest ...." (Pl.'s Mem. at 11) (quoting *Hearing Before the Senate Comm. on the Judiciary,* 107th Cong. 4 (Feb. 28, 2002)). This intent was codified in the HSA provisions transferring to ORR the responsibility for "coordinating and implementing care and placement of unaccompanied alien children who are in Federal custody by reason of their immigrations status ..." and "ensuring that the interests of the child are considered in decisions and actions relating to the care and custody of an unaccompanied alien child." HSA § 462(b)(1)(A), (B), 6 U.S.C.A. § 279(b)(1)(A, B). Finally, defendants also do not dispute that the ORR has custody of these unaccompanied minors. (Defs.' Opp. at 22.)

■ The parties disagree on which side of the line the authority to grant consent lies. Defendants argue that it belongs with DHS on the adjudication of benefits side, and plaintiff insists that it is a function sufficiently related to the "care and custody" of these children so that it falls within ORR's responsibilities. Plaintiff's arguments, however, cannot be sustained.

■ The Court first reviews the language of the statutes as "the most important manifestation of Congressional intent." *Public Citizen,* 332 F.3d at 662

---

8. Defendants attempt, however, to invoke *Chevron* deference based upon *Aguirre–Aguirre* is misplaced. In *Aguirre–Aguirre,* the Court made clear that *Chevron* only applies to agencies interpreting immigration statutes in the same way that it would apply to other statutory schemes. Unlike this case, *Chevron* deference was appropriate in *Aguirre–Aguirre*

because the court was reviewing an official adjudication by the Board of Immigration Appeals. *Id.* at 424, 119 S.Ct. 1439.

9. Specifically, section 451(b)(5), 6 U.S.C.A. § 271(b)(1) gives this authority to a division of DHS—the Bureau of Citizenship and Immigration Services.

(quoting *Cal. ex rel. Brown v. Watt,* 668 F.2d 1290, 1304 (D.C.Cir.1981)). Plaintiff claims that the agency with custody of plaintiff *must* also have the authority to consent within the meaning of 8 U.S.C. § 1101(a)(27)(J)(iii). He reasons that since the Attorney General had both custody and the authority to consent before the enactment of the HSA, the two necessarily go hand in hand. Now that ORR has custody, plaintiff argues, it must be the agency to give consent. (Pl.'s Mem. at 13–14 (citing 8 U.S.C. § 1101(a)(27)(J)(iii)(I), which provides that "no juvenile court has jurisdiction to determine the custody status or placement of an alien in the actual or constructive custody of the Attorney General unless the Attorney General specifically consents to such jurisdiction")).

This conclusion is unsubstantiated and contrary to the statutory scheme at issue. Consent is the first step of the three-step process set out in 8 U.S.C. § 1101(a)(27)(J) that a minor must follow in order to obtain the *immigration benefit* of a SIJ visa. Section 1101 has no relevance and makes no reference to the care and placement of children. Rather, its function is to define the various immigration statuses DHS may grant to aliens as it enforces other sections of the INA, including the grant of immigrant visas (§ 1153), the procedure for granting immigrant status (§ 1154), revocation of approval petitions (§ 1155), and the admission of immigrants into the United States (§ 1181). Thus, consent and the ultimate acquisition of SIJ status appear in the statute along with other immigration benefits that are adjudicated by the Attorney General or his designee.

■ Nor does the text of the HSA advance plaintiff's claim. Interpretation of the language of HSA § 462(b), 6 U.S.C.A. § 279(b) is aided by reference to the statutory canon of *ejusdem generis,* which limits the interpretation of general statutory provisions to conform with a list of specific enumerations. *See Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 114–15, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001) (" 'in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words' ") (citation omitted). Plaintiff's approach attempts the opposite. He cites the general provision that ORR has responsibility for "coordinating and implementing the care and placement of unaccompanied alien children," HSA § 462(b)(1)(A), 6 U.S.C.A. § 279(b)(1)(A), proposing that this encompasses consent decisions. (Pl.'s Mem. at 14–15.) The functions enumerated in subsections (B) through (L), however, specifically describe the "care and placement functions" performed by ORR, including the making and implementing of placement determinations, identifying foster homes, overseeing the personnel of detention centers, and maintaining statistical information regarding unaccompanied alien minors. HSA § 462(b)(1)(A), (C), (D), (F), (G), (J), 6 U.S.C.A. § 279(b)(1)(A, C, D, F, G, J). Not only is the authority for consent decisions noticeably absent, but it is significantly different from the functions enumerated in (A) through (L) of section 462(b)(1), 6 U.S.C.A. § 279(b)(1).

Plaintiff also argues that the Cook Memorandum provides for ORR consent authority. The Memorandum guides the consent-giver to consider, along with the likelihood that the juvenile will be eligible for an SIJ visa, whether a state court dependency proceeding is "in the best interest of the juvenile." (Cook Memorandum at 2.) Plaintiff interprets this to mean that ORR is the *only* agency with the appropriate expertise to decide whether to grant or deny consent, because it is charged with ensuring that the interests of the child are considered in care and custo-

dy decisions. He provides nothing, however, to support the contention that DHS lacks the expertise to decide whether to issue consent, and the Court is unwilling to engage in speculation on this point. Moreover, best interest determinations clearly do not lie solely within ORR's province. The SIJ statute requires that DHS expressly approve an SIJ applicant's state court dependency order when evaluating a SIJ visa application, giving DHS the authority to review and veto, if necessary, a state court's best interest determination. 8 U.S.C. § 1101(a)(27)(J)(iii).

An analysis of the legislative purpose for granting the consent decision authority to the Attorney General also supports the conclusion that consent decisions were intended to relate to the granting of an immigration benefit, not to the care and placement of minors who are in federal custody. The legislative history of the 1997 amendment to § 1101 indicates that the requirement of Attorney General consent was imposed as a precondition to juvenile court jurisdiction in an effort to ensure that SIJ applicants have a special need to remain in the United States and do not use the process simply to gain an immigration benefit. The Conference Report on the Amendment states:

> [t]he language has been modified in order to limit the beneficiaries of this provision to those juveniles for whom it was created, namely abandoned, neglected, or abused children, by requiring the Attorney General to determine that neither the dependency order nor the administrative or judicial determination of the alien's best interest was sought primarily for the purpose of obtaining the status of an alien lawfully admitted for permanent residen[ce], rather than for the purpose of obtaining relief from abuse or neglect.

H.R.Rep. No. 105–405, at 2981 (1997), 1997 WL 712946, at 130. This legislative history "confirms that the revision in the statute was intended to curtail the granting of special immigrant juvenile status ... [and] demonstrates an intent to remove immigration decisions from the exclusive control of juvenile courts and the social agencies affiliated with them." *M.B.*, 301 F.3d at 114; *see also Yeboah*, 345 F.3d at 221–22. As recognized by the Third Circuit, the requirement of consent was intended as a gatekeeping function to reduce the numbers of alien juveniles who might achieve SIJ status, not as a means to promote the best interests of the child.

Consideration of the practice at INS prior to the passage of HSA also undermines plaintiff's position that the authority to consent lies exclusively with the ORR. Prior to the HSA, Thomas Cook, the Acting Assistant Commissioner of INS's Adjudications Division, provided that "district directors, in consultation with their district counsel, should continue to act as the consenting official ...." (Cook Memorandum at 1.) The Adjudications Division, and its functions, became a part of the DHS when the HSA was enacted. HSA § 451(b). In contrast, the Office of Juvenile Affairs was the pre-HSA agency responsible for ORR's functions relating to the care and placement of unaccompanied alien children. (Pl.'s Mem. at 9.) It logically follows that, when HSA divided INS functions in order to separate care and placement functions from adjudicatory functions involving immigration benefits, the authority for consent decisions remained with the adjudicatory functions, thereby coming within DHS's authority.[10]

---

**10.** It is significant that the author of the Cook Memorandum was the Acting Assistant Commissioner of the Adjudications Division. Also, Cook required that legal counsel be consulted with respect to consent decisions, which again bolsters the argument that con-

An examination of the practical impact of a consent decision also undercuts any argument that ORR has been granted by statute the exclusive authority to grant or deny consent. A decision to grant consent may lead to the acquisition of a SIJ visa and permanent residency, while a decision to deny consent may well lead to deportation. In either event, the juvenile is removed from federal custody. ORR's authority, however, is limited to functions regarding the care and placement of unaccompanied aliens *within federal custody* who are the subject of pending immigration proceedings. HSA § 462(b)(2)(A), 6 U.S.C.A. § 279(b)(2)(A). Removal from federal custody is unrelated to and independent of decisions relating to the care and placement of unaccompanied alien children while in federal custody and is thus a function beyond ORR's authority.

Additionally, a review of the relevant legislative history bolsters defendants' view that DHS has consent authority. As part of the HSA, members of Congress unsuccessfully attempted to amend the SIJ statute in conjunction with legislation that divided the care and adjudicatory functions of the INS between DHS and ORR. Efforts were made to enact an amendment to 8 U.S.C. § 1101(a)(27)(J)(iii) that would strip the Attorney General of his authority to grant or deny consent to the state court's jurisdiction, and instead require ORR to certify to DHS that a SIJ applicant is not seeking SIJ status "solely" to obtain "an immigration benefit . . . ." S.A. 4471, 107th Cong. § 1211 (2002). These efforts failed, indicating that Congress rejected the proposal of placing step one of the SIJ process with ORR.[11] *See Gulf Oil Corp. v. Copp Paving Co., Inc.,* 419 U.S. 186, 200, 95 S.Ct. 392, 42 L.Ed.2d 378 (1974) (legislative history of a failed congressional proposal "strongly militates against a judgment that Congress intended a result that it expressly declined to enact").

There is also merit to defendants' suggestion (Defs.' Opp. at 23) that since DHS makes the final determination as to the granting of SIJ status, it too should make the preliminary evaluation. For, as recognized by the Third Circuit in *M.B.*, it is reasonable at the consent stage for the deciding official to "consider the requirements of a petition for special immigrant juvenile classification," because where a petitioner is unable to produce the documentary evidence required for SIJ status, "allowing the juvenile court proceeding to go forward would . . . amount[ ] to endorsing an exercise in futility." 301 F.3d at 115. Under this rationale, it is logical to have DHS exercise control over the preliminary consent stage, as well as the final step the SIJ process.

### CONCLUSION

Having examined the division of responsibility set forth in section 462 of the HSA between the adjudication of immigration benefits and the care and placement of minors in federal custody, the Court must reject plaintiff's thesis that since ORR was

---

sent decisions are adjudicatory functions involving immigration benefits, not care and placement decisions.

**11.** Plaintiff attaches a recent letter from Senators Brownback and Kennedy to two Assistant Secretaries of DHS and HHS to "demonstrate" that Congress intended to confer consent authority on ORR. (*See* Pl.'s Mem., Ex. 3.) This information is irrelevant. Courts view such "postenactment legislative history" as an outright "contradiction in terms," *Sullivan v. Finkelstein*, 496 U.S. 617, 631, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990) (Scalia, J., concurring), or "legislative future" of only "marginal, if any, value." *United States ex rel. Long v. SCS Bus. & Tech. Inst., Inc.,* 173 F.3d 870, 878 (D.C.Cir.1999).

assigned responsibility for the care and custody of these minors, it must also have assumed responsibility for giving consent to jurisdiction by a state court. This argument is belied by an examination of the types of functions that are enumerated in section 462(b)(1)(A)-(L), 6 U.S.C.A. § 279(b)(1)(A–L), all of which relate to the care and placement of the minors while in federal custody, as opposed to the adjudicatory functions set forth in § 1101(a)(27)(J) and the surrounding sections of that statute. It is also inconsistent with the historical practice with respect to the assignment of these functions within INS prior to the passage of the HSA; the explicit purpose for the enactment in 1997 of the consent provision contained in § 1101(a)(27)(J)(iii)(I); and the legislative history of the HSA. While undoubtedly Congress could assign the consent function to ORR, the Court cannot redraft the Act to fill in any legislative gaps where the text, structure, legislative history and purpose of the HSA do not support the division of responsibility that plaintiff now proposes. *See United States v. Locke,* 471 U.S. 84, 95, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985) ("[T]he fact that Congress might have acted with greater clarity or foresight does not give courts a *carte blanche* to redraft statutes in an effort to achieve that which Congress is perceived to have failed to do.").

Accordingly, the Court will deny plaintiff's motion and grant defendants' motion to dismiss. An Order accompanies this Memorandum Opinion.

### *ORDER*

For the reasons set forth in the Memorandum Opinion issued this date, it is this 3rd day of October hereby

**ORDERED** that plaintiff's Motion for Temporary Restraining Order and Prelim-

inary and Permanent Injunction is **DENIED**; it is

**FURTHER ORDERED** that defendants' Motion to Dismiss is **GRANTED**; and it is

**FURTHER ORDERED** that this action is **DISMISSED WITH PREJUDICE.**